826 F.2d 740
 C. Ray PEERY, Appellant,
v.
Verne BRAKKE, as an Administrator of the South Dakota
Department of Agriculture and individually, and
the South Dakota Department of
Agriculture, Appellees.
C. Ray PEERY, Appellee,
v.
Verne BRAKKE, as an Administrator of the South Dakota
Department of Agriculture and individually,
Appellant, and the South Dakota
Department of Agriculture.
 Nos. 86-5145, 86-5162.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1987.
Decided Aug. 12, 1987.
 
 James E. Carlon, Pierre, S.D., for appellant.
 Mark W. Barnett, Pierre, S.D., for appellees.
 Before McMILLIAN and WOLLMAN, Circuit Judges, and WRIGHT,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 C. Ray Peery appeals from a final judgment entered in the District Court for the District of South Dakota in favor of the South Dakota Department of Agriculture (the Department) and Verne Brakke. Peery brought this action under 42 U.S.C. Sec. 1983 claiming that the Department, his employer, and Brakke, his immediate supervisor, denied him procedural due process in terminating his employment. The jury returned a verdict for Peery, but the district court granted a motion for judgment notwithstanding the verdict (j.n.o.v.). Peery now appeals and Brakke cross-appeals.
 
 
 2
 For reversal, Peery claims the district court erred in (1) granting j.n.o.v. on the basis that he had received all the process he was constitutionally due and (2) denying him reinstatement. Brakke cross-appeals, contending the district court should have (1) abstained in deference to a pending state administrative proceeding and appeals therefrom, (2) applied the doctrine of issue preclusion to bar Peery's claim, and (3) granted qualified immunity to the defendants. For the reasons discussed below, we reverse the judgment of the district court. The case is remanded to the district court with directions to reinstate the jury verdict.
 
 I.
 
 3
 Peery was first employed by the Department in October 1974 as Director of the Pesticide Section of the Division of Regulatory Services. Brakke was appointed Director of the Division in October 1981 and became Peery's immediate supervisor.
 
 
 4
 Peery maintains that he performed his job satisfactorily up to the time he was discharged in January 1984. In April 1982, however, Brakke began sending Peery a series of letters and memos criticizing Peery's job performance and listing areas in which Peery needed improvement. Brakke sent several such memos throughout 1982-83. In July 1983, Brakke sent Peery a letter establishing a "work improvement plan" and notifying him that his performance was unsatisfactory and that he would be subject to discipline, including suspension or dismissal, if his work did not improve within six months. In the letter, Brakke identified many specific problems with Peery's job performance and invited Peery to discuss the problems. In October 1983, Brakke formally evaluated Peery's job performance, giving him an overall performance rating of "standard."[1] Peery responded by indicating on the evaluation form that he disagreed with the rating. Peery later submitted a written response to the evaluation, disagreeing with two of the specific criticisms Brakke had made. In November 1983, Brakke sent Peery another memo telling him that his work was not acceptable and making specific charges of unsatisfactory performance. Peery responded with a note about one of these charges, but he did not respond to any of the other allegations.
 
 
 5
 Peery was called into Brakke's office at 3:45 p.m. on January 25, 1984, and told to resign by 5:00 p.m. or be fired. When Peery refused to resign, Brakke handed him a notice of termination. The termination notice reiterated some of the problems listed in Brakke's memos of July and November 1983 and identified certain improvements Peery had made, but also identified many points where performance had not improved to a satisfactory level. The letter then listed seven "incidents" said to indicate that Peery could not satisfactorily perform his job. Peery had been informed of at least one of these seven complaints before the meeting. Brakke did not permit Peery to respond to any of the charges at the meeting.
 
 
 6
 Brakke denied Peery's departmental appeal on February 7, 1984. Peery then filed an administrative grievance pursuant to the South Dakota Career Service Act, S.D. Codified Laws Ann. Ch. 3-6A. The Career Service Commission of South Dakota (the Commission) denied the grievance in November 1984. The Commission concluded that Peery was terminated for cause and that even though Peery had not received a pretermination hearing, he was not entitled to one under governing law. Peery appealed the Commission's determination in state court.
 
 
 7
 While his administrative grievance was before the Commission, Peery filed this Sec. 1983 action in federal district court. Before trial, Brakke asked the district court to abstain pending an outcome in the state proceedings, but the district court denied the motion. The case was tried to a jury, which returned a verdict in Peery's favor on the procedural due process claim and awarded damages. In a special interrogatory, however, the jury found that Peery had failed to prove he was terminated without cause. The district court granted Brakke's motion for j.n.o.v.[2] on the ground that, as a matter of law, Peery had received all the process he was constitutionally due in his termination. Peery v. Brakke, Civ. No. 84-3081 (D.S.D. Mar. 20, 1986) (Memorandum Opinion).
 
 II.
 
 8
 In determining that Peery had received adequate due process, the district court relied on Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (Loudermill ), where the Supreme Court held that an employee with a property interest in continued public employment may not be terminated without "some form of pretermination hearing." Id. at 542, 105 S.Ct. at 1493. Applying this standard, the district court determined that Brakke's repeated and specific warnings and his invitations to discuss job performance problems with Peery, as well as the trial-type administrative hearing available to Peery after termination, satisfied due process. Memorandum Opinion at 9.
 
 
 9
 Peery contends the district court erred in concluding that he had received all the process constitutionally due in his termination. There is no real factual dispute between the parties as to the circumstances that led up to Peery's firing. The issue to be decided in this appeal, then, is purely a question of law: under the factual circumstances of this case, did Peery receive adequate procedural due process?
 
 
 10
 The Supreme Court held in Loudermill that before termination, a tenured public employee[3] is entitled to (1) oral or written notice of the charges against him or her, (2) an explanation of the employer's evidence, and (3) an opportunity to present his or her side of the story. 470 U.S. at 546, 105 S.Ct. at 1495. The purpose of a pretermination hearing, the Court explained, is to be "an initial check against mistaken decisions," not to make a final decision on the merits of the employment dispute. Id. at 545-46, 105 S.Ct. at 1495-96. Thus, if basic aspects of notice and an opportunity to be heard are provided, and a more formal hearing is available to the employee after discharge, the Court stated that pretermination procedures need not be elaborate to satisfy due process. Id. at 545-47, 105 S.Ct. at 1495-96.
 
 
 11
 This court applied Loudermill in Riggins v. Board of Regents, 790 F.2d 707 (8th Cir.1986), where we considered the claims of a public employee who alleged she had not received procedural due process in her termination. Six days before she was fired, Riggins met with her managing supervisor to discuss an incident of insubordination the previous evening. Riggins received notice of the meeting and knew of its purpose before she attended. At the meeting, the managing supervisor read to her the report prepared by one of her immediate supervisors about the incident and gave her an opportunity to explain her version of events. Id. at 709. After the meeting, the managing supervisor discussed Riggins's explanation with her immediate supervisors. The managing supervisor decided Riggins was lying and fired her. Id. Under these facts, we found that the pretermination meeting, along with the formal grievance procedure available to Riggins after termination, satisfied due process under Loudermill. Id. at 711.
 
 
 12
 By contrast, Peery received insufficient notice of charges against him and no meaningful opportunity to respond before he was fired. Peery was called into Brakke's office at 3:45 p.m. and told either to resign by 5:00 p.m. or be fired. When he refused to resign, Brakke handed him notice of termination. The termination notice specified seven "incidents" said to indicate Peery's inability to satisfactorily perform his job. Although Peery had been informed of at least one of these charges before the meeting, he had no prior notice of the other "incidents." Nor was he given any opportunity to respond to the new charges before being fired.
 
 
 13
 Brakke claims that the many critical memos he had sent to Peery in the preceding months gave Peery notice that his job performance was inadequate. Brakke claims further that Peery was repeatedly afforded an opportunity to respond because Brakke invited Peery on many occasions to discuss job performance problems. Peery, with few exceptions, did not do so.
 
 
 14
 Even if the series of critical memos and letters could be interpreted as general notice to Peery of job performance problems, the termination notice Brakke prepared listed seven specific "incidents" as grounds for discharge. These charges were, in large part, new to Peery and had not appeared in any earlier memo or letter. Further, Peery was given no opportunity to respond to these specific charges before being fired. Where an employee receives notice of charges before termination, but is not given an opportunity to respond to the charges until after discharge, due process is not satisfied. See, e.g., Loudermill, 470 U.S. at 544, 105 S.Ct. at 1494. We therefore hold the district court erred in granting j.n.o.v. on the ground that Peery had received all the process constitutionally due in his termination from employment.
 
 III.
 
 15
 Brakke contends on cross-appeal that the Loudermill standard should not have been retroactively applied to this case. Peery was terminated before Loudermill was decided. Even if Loudermill is to be retroactively applied, Brakke contends further that he is entitled to the protection of qualified immunity because the Loudermill decision substantially altered previously existing constitutional law. The district court did not reach the issue of retroactive application of Loudermill or the defense of qualified immunity.
 
 
 16
 We use the three-part analysis of Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971) (Chevron ), to determine whether a decision is to be retroactively applied in a civil matter: (1) does the decision represent a "clear break" with past law, (2) would retroactive application further or retard operation of the new rule, and (3) could retroactive application produce "substantial inequitable results"? Qualified immunity is available to a government official if his or her challenged conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (Harlow ). We are able to simultaneously analyze the retroactivity and qualified immunity issues that Brakke raises because the resolution of each depends in part on whether the Loudermill decision changed clearly established constitutional law governing the procedural protections due a tenured public employee on termination.
 
 
 17
 Loudermill did not, in our view, substantially alter existing law. The decision did not overrule any prior case law nor did it extend due process to require any new protections. Long before Loudermill was decided, the right to "some kind of hearing" before termination was well-established. See Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). In Loudermill, Justice Brennan, writing for the Court, said of the pretermination hearing requirement, "this rule has been settled for some time now." 470 U.S. at 542, 105 S.Ct. at 1493, citing Davis v. Scherer, 468 U.S. 183, 192 n. 10, 104 S.Ct. 3012, 3018 n. 10, 82 L.Ed.2d 139 (1984), and id. at 200-03, 104 S.Ct. at 3022-24 (Brennan, J., concurring in part and dissenting in part). We agree with Justice Brennan's assessment: Loudermill merely summarizes and definitively states already-settled law. Thus, we conclude first that Loudermill is not a "clear break" with past law, Chevron, 404 U.S. at 106-07, 92 S.Ct. at 355-56, and further, that at the time Peery was fired, the due process standard later specifically set out in Loudermill was a "clearly established" constitutional standard "of which a reasonable person would have known," Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. We hold therefore that the district court did not err in retroactively applying Loudermill to this case and that qualified immunity is not available to Brakke.
 
 IV.
 
 18
 We consider next several other issues raised by Brakke on cross-appeal: whether the district court should have abstained from adjudicating this case and whether Peery's Sec. 1983 claim should have been barred under the doctrine of issue preclusion.[4] The premise of both arguments is Brakke's assertion that Peery should not be permitted to challenge his termination in both state and federal proceedings.[5]
 
 
 19
 Brakke moved for abstention before trial under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), but the district court denied the motion. Brakke renews his argument for abstention in this appeal, relying on Ohio Civil Rights Commission v. Dayton Christian Schools, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (Dayton Christian Schools ). In Dayton Christian Schools, the Supreme Court held that a federal court should not exercise jurisdiction over a case where there is pending a state administrative proceeding on the same matter in which (1) important state interests are implicated and (2) the federal plaintiff will have a full and fair opportunity to litigate any constitutional claims. Id. at 2723. The district court had already entered judgment in this case before the Supreme Court's decision in Dayton Christian Schools was issued. Thus, we must first determine if Dayton Christian Schools is to be retroactively applied to this case.
 
 
 20
 Under the first prong of the Chevron retroactivity standard, we must consider whether the decision in Dayton Christian Schools was a "clear break" with past law. Before Dayton Christian Schools, the Supreme Court had applied Younger abstention where there were pending state criminal proceedings, Younger, 401 U.S. 37, 91 S.Ct. 746, or pending state civil proceedings involving important state interests, Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). See Pennzoil Co. v. Texaco, Inc., --- U.S. ----, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (discussing evolution of the Younger doctrine). Younger abstention had also been applied to a state administrative proceeding, an attorney discipline hearing, in Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (Middlesex ). Middlesex, however, did not appear to signal the extension of Younger abstention to state administrative proceedings generally. Supervision of the bar, particularly attorney discipline, is traditionally a responsibility wholly within the jurisdiction of the appropriate state supreme court.
 
 
 21
 The view that Younger abstention did not operate as a general bar to federal court jurisdiction where state administrative proceedings were pending was reinforced by the decision in Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (Patsy ), decided the same year as Middlesex. Patsy held that litigants need not exhaust state administrative remedies before bringing a Sec. 1983 action in federal court.[6] Patsy specifically discussed and rejected arguments that comity and federalism, the policies that underlie the Younger doctrine, justified imposing an exhaustion requirement for Sec. 1983 actions. Id. at 501-02 n. 4, 512-13, 102 S.Ct. at 2560 n. 4, 2565-66. Justice Rehnquist, writing for the Court in Dayton Christian Schools, recognized that extension of Younger abstention to state administrative proceedings needed to be reconciled with the Court's earlier decision in Patsy. Patsy did not conflict with Dayton Christian Schools, he wrote, because "the administrative proceedings here [complaint alleging sex discrimination in employment filed with state civil rights commission] are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest." 106 S.Ct. at 2723 n. 2. We conclude this history of developing case law indicates that the decision in Dayton Christian Schools was a "clear break" with past law, Chevron, 404 U.S. at 106-07, 92 S.Ct. at 355-56. Dayton Christian Schools therefore will not be given retroactive effect in the present case. We hold the district court did not err in refusing to abstain from adjudicating Peery's Sec. 1983 claim.
 
 
 22
 Brakke also moved to bar Peery's Sec. 1983 claim on grounds of issue preclusion.[7] Brakke argues that the Commission's factual findings on the pretermination hearing issue should preclude contrary findings on the same issue in the federal action, citing University of Tennessee v. Elliott, --- U.S. ----, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (Elliott ). In Elliott, the Supreme Court held that the factual findings of a state administrative proceeding are to be given preclusive effect by a federal court in a subsequent Sec. 1983 action. "[W]hen a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. at 3227 (footnote omitted), quoting United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). In the present case, the Commission found that Brakke did not provide Peery with a hearing before he was terminated, but concluded that neither state law nor federal constitutional law required a pretermination hearing.[8] Under South Dakota law, the doctrine of issue preclusion applies to administrative hearings as it does to judicial proceedings. E.g., Schmidt v. Zellmer, 298 N.W.2d 178, 180 (S.D.1980). Brakke thus asserts that the district court should have given preclusive effect to the Commission's factual findings on the procedural due process issue.
 
 
 23
 Although Brakke's preclusion argument is legally correct, it must nonetheless fail in the context of this case. Elliott directs that a state agency's factfinding is to be given preclusive effect in a subsequent Sec. 1983 action. In this case, the Commission made the factual finding that Peery did not receive a pretermination hearing. Neither party disputes this fact. Rather, the disputed issue in this case is one of law--whether Peery was constitutionally entitled to a pretermination hearing. Thus, issue preclusion under Elliott does not apply in any meaningful sense to the present case.
 
 V.
 
 24
 Peery's final argument on appeal is that the district court erred in denying his motion for the equitable remedy of reinstatement. The district court determined that reinstatement was not an appropriate remedy based on the jury's finding that Peery had not proved he was dismissed without cause.
 
 
 25
 In denying reinstatement, the district court relied on Best v. Boswell, 696 F.2d 1282 (11th Cir.), cert. denied, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983), for the principle that equitable relief should be granted or denied by the court in a manner that is consistent with the facts as found by the jury. Id. at 1287, citing Williams v. City of Valdosta, 689 F.2d 964, 977 (11th Cir.1982). The jury awarded Peery compensatory damages for the deprivation of procedural due process,[9] yet Peery contends that reinstatement was part of the proper remedy. Because he was discharged without a pretermination hearing, Peery argues that he had no meaningful opportunity to challenge his employer's assertion that there was cause for his termination. While Peery was given no such opportunity before he was fired, he fully litigated the issue of whether cause existed for his termination in this Sec. 1983 action. The jury found against him on this issue and Peery has not challenged that finding on the merits.
 
 
 26
 The proper remedy for a procedural due process constitutional injury is determined under Carey v. Piphus, 435 U.S. 247, 264-65, 98 S.Ct. 1042, 1052-53, 55 L.Ed.2d 252 (1978), by measuring the remedy sought against the nature of the interests protected by the constitutional right in question. The constitutional injury Peery has shown in this case is not the loss of his job, but rather his termination without procedural due process. Reinstatement may not be an appropriate remedy for an employee who was terminated for cause but denied procedural due process. Cf. Bibbs v. Block, 778 F.2d 1318, 1322 (8th Cir.1985) (banc) (promotion). We hold therefore that the district court did not abuse its discretion in denying Peery's motion for the equitable relief of reinstatement.
 
 
 27
 Accordingly, the judgment of the district court is reversed. The case is remanded to the district court with directions to reinstate the jury verdict.
 
 
 
 *
 The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri, sitting by designation
 
 
 [1]
 The evaluation form is a standard form that provides ratings of job performance ranging from 1 to 500. Brakke noted a number of positive and negative scores for Peery. The average of these scores was a "308" rating. A rating of "308" indicates a performance evaluation of "standard."
 
 
 [2]
 Brakke had moved for j.n.o.v. on the ground of qualified immunity. The district court did not address this contention in its order
 
 
 [3]
 A tenured public employee has a legitimate expectation of continued employment. There is no dispute that Peery had a property interest in continued employment. Peery's due process claim is dependent on having had a property interest in continued employment. Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 2708-10, 33 L.Ed.2d 548 (1972)
 
 
 [4]
 For purposes of our analysis, we have considered the merits of the procedural due process issue first and the abstention and preclusion issues second in this opinion. For litigation purposes, however, the district court must, of course, consider abstention and preclusion matters before reaching the merits
 
 
 [5]
 Peery filed an administrative grievance over his termination and the South Dakota Career Service Commission (the Commission) ruled against him. He appealed the Commission's decision in state court. The state court affirmed the Commission's determination that cause had existed to fire Peery, issuing its decision one month after judgment was entered by the federal district court in the present case. Peery v. Department of Agric., No. 84-329, slip op. at 7 (S.D.Cir.Ct. Apr. 3, 1986). The state court did not rule on the procedural due process issue on the ground that Peery had waived the claim by not originally raising it on appeal. Id. at 6. The decision on the issue of cause for termination was recently affirmed by the South Dakota Supreme Court. Peery v. Department of Agric., 402 N.W.2d 695 (S.D.1987)
 
 
 [6]
 The Younger abstention doctrine and a requirement of exhaustion of state administrative remedies are related. Both operate as jurisdictional bars to a federal forum. If a federal court abstains under Younger from accepting jurisdiction over a Sec. 1983 claim because the litigant is already involved in a state administrative proceeding on the same matter, the litigant is, in effect, being required to conclude all state proceedings before a federal forum is available. The same result occurs where a federal court refuses to accept jurisdiction over a Sec. 1983 claim because the litigant has not yet exhausted state administrative remedies
 
 
 [7]
 Brakke first filed a preclusion motion before trial, but the district court reserved ruling on the motion. Brakke renewed the motion in the form of a motion for j.n.o.v. after the jury returned a verdict in Peery's favor. The district court granted j.n.o.v., but on other grounds
 
 
 [8]
 The Commission noted, however, that at the time of its decision, the Supreme Court had granted certiorari in the case of Cleveland Bd. of Educ. v. Loudermill, 721 F.2d 550 (6th Cir.1983), cert. granted, 467 U.S. 1204, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984)
 
 
 [9]
 The jury awarded Peery $16,000 in compensatory damages. This award was not appealed