Herman **RUNGE**, Appellee,

v.

David **DOVE**, Henry Kosters, in their individual and official capacities; and the Douglas School District 51–1, Appellants.

No. 87–5415.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1988.
Decided Sept. 19, 1988.

Robert L. Lewis, Rapid City, S.D., for appellants.

Larry D. Plank, Rapid City, S.D., for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and HILL,* Senior District Judge.

HEANEY, Circuit Judge.

Herman Runge brought this action under 42 U.S.C. § 1983 claiming that his supervisors David Dove and Henry Kosters denied him his right to procedural due process by firing him from his job as a janitor before providing him with an adequate hearing. Dove and Kosters moved for summary judgment based on the defense of qualified immunity. The district court denied their motion. Dove and Kosters appeal.

A. Appeal from Summary Judgment

█ Initially, we determine whether Kosters and Dove can appeal the denial of their summary judgment motion. An appellate court can hear an appeal under 28 U.S.C. § 1291 only from a "final decision" of a district court. A final decision is not necessarily one entered after the "whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

* The Honorable Irving Hill, Senior United States District Judge for the Central District of California, sitting by designation.

It can be a "collateral order," that is, an order that involves (1) a claim of right; (2) which can be conclusively adjudicated in that order; and (3) which is "separable from, and collateral to, rights asserted in the action." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225–26.

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court established that a denial of a summary judgment motion based on qualified immunity generally is a collateral order. The Court reasoned that qualified immunity amounted to "an entitlement not to stand trial under certain circumstances." *Id.* at 525, 105 S.Ct. at 2815. Moreover, the right not to stand trial would be conclusively adjudicated on denial of summary judgment because nothing else other than filing the motion could be done by the defendant to prevent the trial which he or she believes is barred. *Mitchell*, 472 U.S. at 527, 105 S.Ct. at 2816. Finally, qualified immunity is conceptually distinct from the merits of the suit because it addresses a question of law: whether the law clearly established the impermissibility of the defendant's actions at the time they were taken. Any factual question which may be implicated does not pose an obstacle because the appellate court accepts the plaintiff's version of the facts for purposes of summary judgment. As the Court stated in *Mitchell*:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law.[1]

1. The Supreme Court in *Mitchell* does not use the term "question of law" in the sense that factual matters cannot be considered. Rather, it uses the term in the sense that any factual disputes will not be resolved because one version of the facts is accepted as true for purposes of the motion. *See Mitchell*, 472 U.S. at 528 & n. 9, 105 S.Ct. at 2816 & n. 9.

2. Two cases involving immunities that did not permit an appeal from a summary judgment are *Chicago and North Western Transp. Co. v. Ulery*, 787 F.2d 1239 (8th Cir.1986) and *Group Health Inc. v. Blue Cross Ass'n*, 793 F.2d 491, 497 (2nd Cir.1986). In *Chicago and North Western Transp. Co.*, we reasoned that an interlocutory

*Id.* at 528, 105 S.Ct. at 2816. *See also Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 202–03 (8th Cir.1986).

Since the district court's denial of Kosters' and Dove's motion for summary judgment was a collateral order, Kosters and Dove could immediately appeal it.[2]

## B. The Facts as Stated by Runge

The district court in its amended order of July 30, 1987, accepted Runge's version of the facts for purposes of the summary judgment motion. We summarize that version here.

Runge began his employment with the Douglas School District in June, 1983, as a part-time custodian. In August, 1984, he became a full-time night custodian. After completing a three month probationary period, he could "be suspended without pay or discharged only for cause."

On June 23, 1986, Runge asked Dove, the Coordinator of Buildings and Grounds for the School District, for permission to report late for work because he had to meet with his children's special education teacher at 9:30 a.m. the next day. Dove gave Runge permission to arrive an hour late. Dove also told Herold Hemphill, the day-time custodian, that Runge would be "coming in late." Later that day, a police officer informed Runge that three of his children had been arrested for shoplifting and that Runge should come to the police station the next day. Runge told Hemphill that in light of the arrest, he might be in even later the next day.

appeal could not be permitted because the defendants were private party state actors. *Chicago and North Western Transp. Co.*, 787 F.2d at 1241 & n. 1. In *Group Health Inc.*, the Court of Appeals for the Second Circuit refused to allow an immediate appeal from the denial of absolute immunity. It reasoned that the immunity issue could not be resolved without addressing underlying claims on the merits and that judicial economy required that it not consider the immunity issue which was closely intertwined with another immunity issue not then before the appellate court. *Group Health Inc.*, 793 F.2d at 497–98. None of these conditions exists here.

On June 24, Runge met with the special education teacher and went to the police station and the State's Attorney's Office to inquire about his children's arrest. He returned home at about 2:00 p.m. Runge did not go to work on June 24th or notify anyone he would not be going to work because he assumed Hemphill would explain his absence; he was in distress over the arrest of children; and only an hour was left in his shift.

On June 25, Runge overslept, arrived to work late and missed part of a meeting of maintenance personnel. After the meeting, Dove took Runge aside and told him that he had missed the entire day of the 24th without permission. Dove told Runge that he believed Runge had lied about the time he needed off and that Runge had violated the rules. When Runge tried to explain, Dove ignored him and told Runge that he would be fired. Dove said he would discuss the matter with Kosters, the Assistant Superintendent, who was Dove's superior, and talk to Runge later.

Dove met with Kosters. Dove explained his decision to fire Runge to Kosters. He asked Kosters about the Employee Handbook. Kosters approved Dove's decision to fire Runge and agreed that Dove should follow the procedure set forth in the Employee Handbook.

Later that morning, Dove called Runge to his office. He advised Runge that he was fired for dishonesty and violating the rules. Dove did not give Runge an opportunity to respond to the accusations. Dove produced a termination evaluation which listed Runge's various infractions of the rules, including the June 24th incident.

Subsequently, Kosters held a hearing at which Runge was represented by counsel. Kosters upheld the termination.

## C. Qualified Immunity

■ Dove and Kosters claim that, as a legal matter, they are entitled to qualified immunity. Qualified immunity protects government officials from unsubstantial suits and harassing litigation, *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982), while not foreclosing suits for damages, which may be "the only realistic avenue for vindication of constitutional guarantees." *Id.* The standard for determining whether an official is protected is an objective one: whether the constitutional rights the defendant is claimed to have violated were clearly established at the time the alleged violation occurred. *Id.* at 819, 102 S.Ct. at 2738. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. ——, ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987).

When the district court denied the summary judgment motion, *Anderson* had not been decided. Dove and Kosters claim that *Anderson* changes the nature of the inquiry on summary judgment.

■ Whether *Anderson* changes or clarifies the nature of the inquiry on summary judgment, we believe the district court properly denied the summary judgment motion of Dove and Kosters. Under *Anderson*, a plaintiff must show more than that an abstract right was clearly established. For example, a plaintiff cannot merely assert that the right to procedural due process is clearly established. He or she must make a "particularized" showing that a "reasonable official would understand that what he is doing violates that right" or that "in the light of preexisting law the unlawfulness" of the action was "apparent." 483 U.S. at ——, 107 S.Ct. at 3039, 97 L.Ed.2d at 531.

■ In determining in the present case whether the infringement of Runge's right to procedural due process should have been apparent to a reasonable official, we turn to the case cited by the district court, *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). *Loudermill* involved two consolidated cases. In one a security guard employed by a school district was dismissed on the ground that he failed to disclose a prior felony conviction. In the other, a school bus mechanic was dismissed because

he failed an eye examination. Both employees were tenured and could be dismissed only for cause. They thus each had a property interest in continued employment. *Id.* 470 U.S. at 539, 105 S.Ct. at 1491.

The question confronted in *Loudermill* was what procedural process they were due prior to termination by their employers. The Court began by observing that the requirement of "some kind of a hearing" prior to being discharged has been "settled for some time now." *Id.* at 542, 105 S.Ct. at 1493. After balancing the interests of the employee in retaining employment and the government in removing unsatisfactory employees and avoiding administrative burdens and the interest of both in an accurate determination, the Court held that something short of a full pretermination hearing was required. *Id.* at 545, 105 S.Ct. at 1495. Specifically, it held that the "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495.

Under even the most "particularized" or "fact-specific" inquiry, *Loudermill* provides a clear rule which should have governed the conduct of the school officials here. We simply cannot find significant factual differences between the employment situation of the bus mechanic in *Loudermill* and the custodian here. Clearly, *Loudermill* controls.

Moreover, it is apparent that, under the facts as presented by Runge, Dove and Kosters did not provide Runge with an adequate pretermination hearing. At no time did they give him an opportunity to present "his side of the story." When Dove first reprimanded Runge for his tardiness and when he called Runge to his office, Dove did not give Runge *any* opportunity to explain.[3]

Kosters and Dove counter, arguing first that *Loudermill* does not create a clear rule. They cite the dissent of Justice Rehnquist where he stated: "[t]he lack of any principled standards in this area means that these procedural due process cases will recur time and again. Every different set of facts will present a new issue on what process was due and when." 470 U.S. at 562–63, 105 S.Ct. at 1504. Read in context, it is clear that Justice Rehnquist is critizing what he perceives as an inconsistency among *Loudermill* and other procedural due process cases such as *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (full-fledged trial type hearing required before welfare benefits could be denied); and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (no pretermination process required before disability benefits could be denied). As he states, the "results from today's balance certainly do not jibe with the result in *Goldberg* or *Mathews.*" *Loudermill*, 470 U.S. at 562, 105 S.Ct. at 1504. Whether there is inconsistency among these cases is not at issue here. *Loudermill* is the most recent of these cases and its facts are far more analogous to those present here. It articulated the constitutional standard applicable to the rule which Dove and Kosters should have followed.

The cases from this Circuit decided after *Loudermill* have followed *Loudermill*. In *Peery v. Brakke*, 826 F.2d 740 (8th Cir. 1987), the plaintiff was a pesticide inspector for the South Dakota Department of Agriculture. At a meeting with a supervisor, he was asked to resign or be fired because of unsatisfactory work. *Id.* at 742. When he refused to resign, he was given a notice listing various deficiencies in his performance, only one of which he was previously aware. The supervisor did not permit him to respond to any of the charges. *Id.* We found that the plaintiff received insufficient notice and no opportu-

---

**3.** It should be noted that *Anderson* does not require that the "very action in question [have] previously been held unlawful." 483 U.S. at ——, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. Here, in fact, the very action in question, the firing of a tenured public school employee without pro-

viding him or her an opportunity to respond at a pretermination hearing, has been held to be unlawful. Thus, under an even more rigorous test than *Anderson* requires, Kosters' and Dove's actions must be considered to have violated clearly established law.

nity to respond to the charges. Therefore, his right to procedural due process was violated.

In *Riggins v. Board of Regents*, 790 F.2d 707 (8th Cir.1986), a university custodian had received notice of a meeting at which she was to discuss an incident of insubordination. The supervisor read her a report about the incident and gave her an opportunity to respond. *Id.* at 709. The supervisor discussed the matter with her superiors and then decided that the employee was lying and should be fired. *Id.* We held that the plaintiff's right to procedural due process was not violated.[4]

Although *Peery* was decided after Runge was fired, both *Peery* and *Riggins* indicate that *Loudermill* creates a clear rule which has been followed in this Circuit.[5]

Kosters claims that he did not order or ratify Dove's decision until after the firing was already completed. He therefore contends that a reasonable person in his position would not believe his actions were unlawful. The question, however, is not whether Kosters' actions were unlawful but whether the firing was unlawful and whether such unlawfulness was clearly established at the time it took place. Whether Kosters participated in or caused that firing is a separate question of fact which must be addressed at trial.

CONCLUSION

Not only is the abstract right to procedural due process clearly established, but so is the "particularized" right of a tenured public employee to an opportunity to explain his or her "side of the story" at a pretermination hearing. Under the facts as presented by Runge, he was not given this opportunity. We therefore affirm the district court's denial of Dove's and Kosters' motion for summary judgment.

---

**4.** Similarly, *Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985), a case cited by Dove and Kosters, is consistent with our interpretation of *Loudermill*. There the plaintiff was given notice, a full explanation of the charges, and "ample opportunity to respond orally" to them, and therefore procedural due process was not denied. *Id.* at 1414.

---

**5.** Moreover in *Peery* the firing occurred before *Loudermill* was decided. We still held that the firing violated clearly established law because *Loudermill* "merely summarizes and definitively states already settled law." *Peery*, 826 F.2d at 744.