Donald **PERLEY, By his Wife and Next Friend, Ruth PERLEY and Donald King, individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

Charles M. **PALMER, in his Official Capacity as Director of the Iowa Department of Human Services, Defendant/Third–Party Plaintiff,**

v.

Donna **SHALALA, In her official capacity as Secretary of the United States Department of Health and Human Services, Third–Party Defendant.**

No. C 92–4037.

United States District Court,
N.D. Iowa,
Western Division.

April 21, 1994.

---

Marti Nerenstone, Managing Atty., Legal Services Corp. of Iowa, Council Bluffs, IA and Joseph Basque, Staff Atty., Sioux City, IA, for plaintiff.

Lawrence D. Kudej, Asst. U.S. Atty., Cedar Rapids, IA, for defendant Shalala.

Daniel Hart, Des Moines, IA, for defendant Palmer.

### ORDER

DONALD E. O'BRIEN, District Judge.

This matter comes before the Court on plaintiff's motion to certify a class action, defendant Iowa Department of Human Services' (DHS) motion for summary judgment, and plaintiffs' and defendant DHS's cross motions for summary judgment on the merits. After a careful review of both oral and written arguments, the Court grants plaintiffs' motion for certification of a class and denies defendant DHS's motion for summary judgment. The Court denies plaintiffs' and defendant DHS's cross-motions for summary judgment on the merits as more specifically set forth herein.

### FACTS

Plaintiffs, on behalf of themselves and all others similarly situated, have brought suit against Charles Palmer in his official capacity as director of the Iowa Department of Human Services (DHS).[1] Plaintiffs object to a DHS policy which counts "improved" Veterans Administration pension benefits as income for Medicaid eligibility purposes. Plaintiffs assert that this policy violates Title XIX of the Social Security Act (Act) and its supporting regulations. Plaintiffs' also contend that this policy, which results in a denial of Medicaid benefits, is a violation of their Fourteenth Amendment right to equal protection of the laws.

Pursuant to an agreement reached by plaintiffs' and the DHS, this Court entered a preliminary injunction on June 25, 1992. This preliminary injunction provided that DHS would redetermine the Medicaid eligibility of named plaintiffs Donald Perley and Donald King and disregard as income any part of named plaintiffs' Veterans Administration (VA) pension which were paid based on the VA's consideration of "unusual medical expenses" (UME).[2] Additionally, the preliminary injunction provided that if the disposition of this case on the merits was in defendant's favor, all amounts paid by the DHS pursuant to the preliminary injunction could be treated as overpayments to the named plaintiffs.

Subsequent to this agreement, the DHS filed a third-party complaint against the Sec-

---

1. The Court notes at the outset that named plaintiff Donald Perley has died since the filing of this lawsuit, and thus he is represented by his next friend and wife, Ruth Perley.

2. For purposes of this order, "unusual medical expenses" are the same as unreimbursed medical expenses given the parties use of these terms interchangeably.

retary of the U.S. Department of Health and Human Services (HHS). The object of this complaint was to obtain an order compelling HHS to pay federal matching funds to the DHS if this Court ordered DHS to reimburse plaintiffs. HHS made a motion to dismiss this third-party complaint which was denied.

## DISCUSSION

Plaintiffs seek to certify as a class all elderly veterans or spouses of veterans who have been denied Title XIX benefits in the two years proceeding the filing of this action, or may be denied such benefits in the future, due to the DHS policy regarding veterans improved pensions.[3] Plaintiffs assert they meet the four criteria for class certification under Fed.R.Civ.P. 23(a). Plaintiffs first argue that the numerosity requirement is met. Although it is nearly impossible to determine exactly the number of veterans affected by the policy, plaintiffs state that approximately 500 veterans in Iowa receive "Aid and Attendance" benefits and Title XIX benefits. Therefore, it is reasonable to believe that at least that number of veterans are denied Title XIX benefits as a result of receiving improved veterans pensions due to UME. Plaintiff also asserts that the commonality requirement is easily met, because the common question here is whether the DHS policy is consistent with federal requirements governing income eligibility for Title XIX benefits. As for typicality, plaintiffs argue that the claims of the named plaintiffs are typical of other class members because the claims of each class member is premised on the same legal theory. Finally, plaintiffs assert that the named plaintiff will adequately represent the class because they have common interests with the class which will be vigorously represented through qualified counsel. Plaintiff also argues that the requirements of Rule 23(b) are met in so far as the party opposing the class, the DHS, has "acted or refused to act on grounds generally applicable to the class."

DHS resists plaintiff's motion to certify a class in a motion for summary judgment. In this motion, DHS argues that plaintiffs' mo-

tion to certify a class must fail on the grounds of mootness, preclusion, and the Eleventh Amendment's sovereign immunity provisions. DHS argues that the named plaintiffs' claims for prospective relief are moot because plaintiff Perley has died and plaintiff King's benefits were redetermined according to the preliminary injunction. This redetermination makes King eligible for Medicaid without regard to DHS's treatment of improved pension payments. DHS argues that this Court cannot certify a class even if the other veterans in the class have a "live" case because the named plaintiffs' claims are now moot.

DHS also argues that final decisions rendered against plaintiffs in state administrative proceedings preclude plaintiffs' claims in this case. Both plaintiffs in this case had a hearing before an Administrative Law Judge (ALJ) who denied the award of benefits. Both plaintiffs appealed the denial to the Director of DHS, who issued a final decision adopting the ALJ's decision. DHS argues that because plaintiffs had an adequate opportunity to litigate in a quasi-judicial state administrative proceeding the issues they now seek to raise here, plaintiffs present action must be barred. *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). DHS also asserts that both factual issues and legal issues are precluded from being considered in federal court. *Deretich v. Office of Admin. Hearings*, 798 F.2d 1147 (8th Cir.1986). Furthermore, DHS argues that any claims by plaintiffs that seek retrospective relief, to be paid by the state for past violations of federal law, are claims barred by the Eleventh Amendment.

In response to DHS's mootness and preclusion arguments, plaintiffs' argue that even though one of the named plaintiffs has received some relief from their claim through the preliminary injunction, a class can be certified which relates back to the time the complaint was filed. *Zeidman v. J. Ray McDermott and Co., Inc.*, 651 F.2d 1030, 1051 (5th Cir.1981). Plaintiffs also state that DHS has informed plaintiffs that DHS will

---

**3.** The bottom line is that in some cases individuals receiving a veterans pension are said to be ineligible for Title XIX benefits because they have too much income.

seek an overpayment if plaintiffs' lose this case on the merits; thus, the case is not moot. Plaintiffs also respond that the state administrative decisions denying them benefits does not preclude them from bringing suit, and argues that DHS's reading of *University of Tennessee v. Elliott* is inaccurate. Plaintiff argues that *Elliott* only precludes federal courts from reviewing the *fact-finding* of an administrative agency, and that no such preclusive effect is to be given to legal challenges to agency actions. See *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226–27, 92 L.Ed.2d 635 (1986). Finally, plaintiffs contend that they are not seeking retrospective relief barred by the 11th Amendment, because plaintiffs seek notice of relief which is clearly permitted in § 1983 actions and is not in violation of the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

■ The Court first considers DHS's objection that the action before the Court is moot. It is well established that a named plaintiff in a class action suit must present a live case or controversy at the time the complaint is filed and at the time of certification. *Bishop v. Committee on Professional Ethics and Conduct of the Iowa Bar*, 686 F.2d 1278, 1283 (8th Cir.1982). To avoid dismissal based on mootness, "the named plaintiff, throughout the course of the litigation, 'must show that the threat of injury in a case is real and immediate, not conjectural or hypothetical.'" *Id.* at 1283, (citing *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975)). "A named plaintiff must have a personal stake in the outcome of the case at the time the district court rules on class certification to prevent mootness of the action." *Inmates of Lincoln Intake and Detention Facility v. Boosalis*, 705 F.2d 1021 (8th Cir.1983) (citing *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)).

■ Donald Perley died on June 12, 1992. Neither Donald Perley, nor his representative Ruth Perley, has any claim for future benefits if plaintiffs succeed on the merits of their claim. As far as overpayments, the DHS may try to collect overpayments from Donald Perley's estate under Iowa Code § 249A.5 which states:

> Assistance incorrectly paid is recoverable from the provider, or from the recipient, while living, as a debt due the state and, upon the recipient's death, as a claim classified with taxes having preference under the laws of this state.

Iowa Code § 249A.5 (1993). The recovery of an overpayment from Donald Perley's estate presents no injury to Donald Perley himself. The issue is whether such an overpayment collection could affect his representative and next friend, Ruth Perley. The DHS's collection of an overpayment from Donald Perley's estate could affect the amount Ruth Perley ultimately receives from her husband's estate. Thus, the Court is persuaded that there is a potential injury to Ruth Perley which allows the Court to name Donald Perley as a named plaintiff with Ruth Perley as his representative.

■ As for named plaintiff Donald King, it is true that Donald King's benefits were redetermined pursuant to the preliminary injunction and that he is now receiving Medicaid benefits without regard to his improved VA pension benefits. This arrangement, however, is temporary. A permanent injunction has not been issued in this case permanently redetermining King's benefits without regard to his VA improved pension. Therefore, there is a real and immediate threat of injury to Donald King in that, pursuant to the preliminary injunction agreement, the DHS will pursue overpayment collections from King if DHS succeeds on the merits of this case. King also has a strong personal stake in this litigation because King would again be subject to the DHS policy in question if the DHS succeeds on the merits of their claim. The preliminary injunction would expire, and King would again have his veterans improved pension included as income in determining his Medicaid eligibility. To hold that King's claims are moot in this case would effectively allow the DHS to insulate itself from every challenge by a beneficiary of a state benefit policy or program. The DHS could simply obtain a preliminary injunction redetermining the benefits of a plaintiff and thereby moot plaintiff's claims.

Plaintiffs could never effectively pursue a lawsuit, and the state would always evade review of challenged benefits policies and programs. For these reasons, the Court finds that named plaintiff King presents a live case and controversy to this Court.

The Court next considers DHS's argument that prior administrative decisions bar the consideration of plaintiff King's claims in federal court. In *University of Tennessee v. Elliot*, the Supreme Court found that the factual findings of a state administrative proceeding are to be given preclusive effect in a subsequent § 1983 action in federal court. *University of Tennessee v. Elliot*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226–27, 92 L.Ed.2d 635 (1985). According to the Supreme Court, federal courts must give a state agency's *factfinding* the same preclusive effect which it would be entitled to in the State's courts if the state agency " 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' " *Id.* (emphasis added) (citing *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

■ The preclusion of administrative fact-findings in a subsequent federal § 1983 action, however, does not translate into a corresponding rule which gives preclusive effect to the legal conclusions of an administrative agency. *Peery v. Brakke*, 826 F.2d 740 (8th Cir.1987). In *Peery v. Brakke*, a tenured state employee brought a § 1983 action against a state administrator alleging denial of procedural due process in the termination of his employment. *Id.* at 742. Plaintiff's claims were initially heard in a state administrative agency proceeding, where the agency determined that plaintiff was terminated for cause and that even though plaintiff did not receive a pretermination hearing, plaintiff was not entitled to one under the governing law. *Id.* Defendant moved to bar plaintiff's § 1983 claim on the ground that plaintiff's claims had already been litigated in the agency proceeding. *Id.* at 746. The Eighth Circuit rejected defendant's preclusion argument and made a distinction between questions of law and questions of fact decided by an administrative agency. *Peery* held that the agency's factfinding that plaintiff did not receive a pretermination hearing would be given preclusive effect under *University of Tennessee v. Elliot.* As to the question of whether plaintiff was constitutionally entitled to a pretermination hearing, however, the court held that the agency's decision was not preclusive. According to the court:

> ... [T]he disputed issue in this case is one of law—whether Peery was constitutionally entitled to a pretermination hearing. Thus, issue preclusion under *Elliot* does not apply in any meaningful sense to the present case.

*Peery v. Brakke*, 826 F.2d 740, 746 (8th Cir.1987). Under *Peery*, the issue preclusion of *Elliot* which precludes a relitigation of factual findings of a state agency does not apply when the disputed issues in the case involve questions of law and not fact. *Id.*

■ In the present case, DHS argues that the administrative finding in Donald King's case would be given preclusive effect in the Iowa courts, and therefore, *University of Tennessee v. Elliot* requires that the state agency's decision also bind this Court and prevent this Court's review of King's claims. DHS argues that Donald King cannot maintain his present § 1983 claim because it is merely a relitigation of the issues already litigated in the state administrative proceedings. DHS's argument based on preclusion fails in this case. The issue now before this Court is whether the DHS policy which determines eligibility for Medicaid benefits by including veterans improved pensions as income violates Title XIX of the Social Security Act and its supporting regulations. This Court is persuaded that this issue involves the interpretation of the applicable Medicaid statute and accompanying regulations, and therefore is clearly a question of law and not one of fact. Although defendants assert that this issue is identical to the issue already decided by the administrative agency, *Elliot* and *Peery* dictate that an agency's decisions on disputed issues of law have no preclusive effect on a plaintiff's § 1983 action. Based on the foregoing, this Court orders that named plaintiff King be allowed to proceed in federal court on his § 1983 claim.

DHS cites *Deretich v. Office of Administrative Hearings,* 798 F.2d 1147 (8th Cir. 1986), in support of the proposition that both factual and legal issues decided in a prior administrative agency proceedings have a preclusive effect on a subsequent § 1983 action. In *Deretich,* a dismissed state employee brought a civil rights action against the state agency which dismissed him. *Id.* at 1150. After the dismissal from his employment but before bringing his § 1983 claim in federal court, plaintiff went through an administrative grievance procedure. Plaintiff's initial grievance was denied and plaintiff appealed within the administrative process. On appeal in the administrative process, plaintiff received a five day grievance appeal hearing before an independent hearing examiner. After the appeal hearing, the hearing examiner issued a fifty-six page advisory opinion which denied the majority of plaintiff's claims. *Deretich,* 798 F.2d at 1149–50.

When plaintiff in *Deretich* brought his § 1983 claim in federal district court, the district court dismissed a portion of plaintiff's claim based on the idea that plaintiff's prior administrative hearing operated as res judicata to plaintiff's subsequent § 1983 claim in federal district court. On appeal to the Eighth Circuit, plaintiff contended that the district court improperly applied the doctrine of res judicata in dismissing his § 1983 claims. *Id.* at 1153. The Eighth Circuit held that the dismissal of the claims brought by plaintiff in his grievance proceedings was correct in light of *University of Tennessee v. Elliot,* and noted that plaintiff had been provided with an independent hearing examiner who spent five days hearing the case and issued a fifty-six page advisory opinion. *Id.* at 1153–54. This Court is not persuaded that *Deretich* bars plaintiffs' claims in the present case. *Deretich* predates *Peery v. Brakke* by one year, and does not contain any discussion of the distinctions between law and fact discussed in *Peery.* In addition, *Deretich* and the case now before the Court are distinguishable on their facts. Plaintiffs in the present case did not receive the extensive hearing and detailed advisory opinion rendered in *Deretich.* The Court finds that the facts of the case before this Court more closely parallel those of *Peery,* and therefore the Court rejects DHS's argument that plaintiffs' are barred from pursuing their claims in federal court.

■ Finally, the Court considers defendant DHS's objections to class certification based upon the application of the Eleventh Amendment to this case. DHS argues that plaintiff seeks retrospective relief, in the form of payments by the state for past violations of federal law, and that this form of relief is barred by the Eleventh Amendment. Plaintiffs include in their prayer for relief the following: (1) A declaratory judgment declaring that DHS's policy of denying individuals Title XIX benefits by counting their VA increased pension benefits as income violates federal and state laws and regulations and denies the Plaintiff and class members equal protection of the laws; (2) a permanent injunction prohibiting DHS from counting VA improved pension benefits as income and compelling DHS to approve Title XIX benefits in all instances where DHS has denied individuals Title XIX benefits as a result of counting VA increased pension benefits for Medicaid eligibility; and (3) an order directing DHS to send notice to plaintiff and all class members informing them of their right to seek relief through administrative demand for Medicaid benefits that were wrongfully denied due to DHS's illegal policy. Plaintiff denies that it is seeking retrospective relief in the form of payments from the state, and instead argues that it seeks only notice relief which would allow beneficiaries who were denied benefits in the past to petition the state for those past benefits.

If plaintiffs succeed on the merits of their claim and the DHS is required to change its current policy, the DHS is correct in asserting that the Eleventh Amendment would prohibit this Court from awarding relief in the form of retroactive Medicaid benefits to compensate plaintiffs for benefits they were denied under the DHS policy. "Though a § 1983 action may be instituted by public aid recipients such as respondent, a federal court's remedial power consistent with the Eleventh Amendment, is necessarily limited to prospective relief ... and may not include a retroactive award which requires the payment of funds from the state treasury."

*Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). This Court lacks the power to grant plaintiffs' a "retroactive award which requires the payment of funds from the state treasury." *Id.* at 677, 94 S.Ct. at 1362.

However, after carefully reviewing plaintiffs' prayer for relief, this Court finds no support for the argument that plaintiffs' are seeking retroactive awards that violate the Eleventh Amendment. Plaintiffs' prayer for relief does not ask this Court to order benefits to be paid from the state treasury, and thus there is no claim for relief which violates the Eleventh Amendment. Instead, plaintiffs only seek relief in the form of a declaratory judgment, permanent injunction, and notice relief. Defendants concede that plaintiffs requests for declaratory relief and permanent injunctive relief regarding future benefits are forms of prospective relief not barred by the Eleventh Amendment. *See Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979). Additionally, the Supreme Court has explicitly held that claims for notice relief do not violate the Eleventh Amendment. *Quern v. Jordan,* 440 U.S. 332, 349, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1972) held that a federal district court could order state defendants to send a notice to members of a class of public aid applicants without running afoul of the Eleventh Amendment. Whether or not the class member would receive retroactive benefits would then rest "entirely with the State, its agencies, courts, and the legislature, not with the federal court." *Id.* at 348, 99 S.Ct. at 1149. The notice in *Quern* simply apprises members of the class of "whatever administrative procedures may already be available under state law by which they may receive a determination of eligibility for past benefits." *Id.* at 347–48, 99 S.Ct. at 1149. If plaintiffs' here did succeed on the merits of their claim, the determination of whether plaintiffs' would receive any retroactive benefits would rest entirely with the state. Therefore, there would be no violation of the Eleventh Amendment. This Court would only notify plaintiffs' of state administrative procedures through which they might determine their eligibility for past benefits. For the foregoing reasons, this Court rejects plaintiff's arguments in opposition to class certification based on the Eleventh Amendment.

■ HHS, third-party defendant in this case, also objects to plaintiffs' motion to certify a class. HHS argues that it is not necessary to certify the class in this case because the relief sought, a declaratory judgment, will produce the same results whether there is a class or an individual plaintiff. Plaintiffs note that Federal Rule of Civil Procedure 23 does not contain a "necessity" requirement, and therefore plaintiffs need not demonstrate necessity to certify a class under Rule 23. Even though not required to prove the need to certify a class, plaintiff argues that a class action is necessary in this case to afford complete relief to those affected by the DHS policy. In the absence of a class action, plaintiffs' contend that the only relief that could be afforded would be prospective, since there would be no way of notifying those class members who had suffered under the DHS policy in the past in order that they could receive recompense for their past losses. The Court rejects HHS's argument that it is not necessary to certify a class in this case because a declaratory judgment would produce the same result. A declaratory judgment would provide prospective relief in terms of changing the current DHS policy. But, as discussed above in reference to DHS's arguments against class certification, plaintiffs' are also entitled to seek notice relief and this relief may only be achieved through a class action.

Having rejected both defendants' resistances to plaintiffs' certification motion, this Court now grants plaintiffs' motion to certify a class. Plaintiffs have met the requirements of Fed.R.Civ.P., including the requirements that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the named plaintiff are typical of the claims of the class; and (4) that the named plaintiff will fairly and adequately represent the interests of the class. Plaintiffs are therefore entitled to class certification.

■ The only remaining issues for the Court to decide involve the scope of the class and its definition. As mentioned, plaintiffs seek to certify as a class all elderly veterans or spouses of veterans in Iowa who may in the future be denied Title XIX benefits as a result of the DHS's policy of counting VA improved pensions (awarded pursuant to 38 C.F.R. § 3.3 for unreimbursed medical expenses) as income to determine eligibility for Title XIX benefits. Plaintiffs also seek to include in this class all persons who have been denied Title XIX benefits due to the same DHS policy in the two years proceeding the filing of this action. Third-party defendant HHS opposes the scope of this class, and argues that it should be limited to those persons who were affected by the regulations in question during the period of 90 days prior to May 22, 1992, the date the complaint was filed. HHS argues that this would limit the effect of any ruling to those purported class members who had or would have had appeal rights of an adverse decision of the Iowa Department of Human Services concerning their Title XIX benefits. Plaintiffs argue that their cause of action is provided by § 1983 and that the scope of the class should be determined by the applicable statute of limitations period which is two years. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir.1985). Thus, they argue the putative class would open in May of 1990, two years before this action was filed. This Court finds that it need not make a final ruling on the scope of the class at this time. A district court retains authority to amend or redefine a class if events in the course of the class action litigation require amendment or redefinition. *Robin v. Doctors Officenters Corp.*, 686 F.Supp. 199, 203 (N.D.Ill.1988). Therefore, this Court accepts plaintiff's arguments regarding the scope of the proposed class for now with the reservation that the Court may in the future, if it seems to be appropriate, limit the scope of the class pursuant to its discretion to do so.

■ Finally, this Court addresses DHS's objections to the definition of the proposed class. Again, plaintiffs seek to certify as a class all elderly veterans or spouses of veterans in Iowa who may in the future be denied Title XIX benefits as a result of the DHS's policy of counting VA improved pensions awarded *for* unreimbursed medical expenses as income in determining eligibility for Title XIX benefits. (Emphasis added.) Plaintiffs also seek to include in this class all persons who have been denied Title XIX benefits due to the same DHS policy in the two years proceeding the filing of this action. DHS objects to plaintiffs' reference to improved pensions awarded "for" unreimbursed medical expenses. DHS believes that the word "for" mischaracterizes the VA's consideration of unreimbursed medical expenses in a way that prejudices DHS. DHS argues that a more accurate and less prejudicial definition would refer to improved pension payments as "attributable to the consideration of reimbursed medical expenses under 38 C.F.R. § 3.272(g)." Plaintiff responds that DHS's objection is merely semantic, and argues that plaintiffs' characterization essentially tracks the legislative language in 38 C.F.R. § 3.272(g), which determines exclusions for countable income for purposes of determining entitlement to improved pensions. 38 C.F.R. § 3.272(g) excludes "any unreimbursed amounts which have been paid within the 12 month annualization period *for* medical expenses regardless of when the indebtedness was incurred." (Emphasis added.) Plaintiff also cites *Sherman v. Griepentrog*, 775 F.Supp. 1383, 1387 (D.Nev.1991), where a district court certified a class based on a class definition referring to increased pensions received from the VA "as reimbursement *for* unusual medical expenses." *Sherman v. Griepentrog*, 775 F.Supp. at 1387. (Emphasis added.) Plaintiff argues that no objection was noted in *Sherman* based upon the definition of the pension. This Court accepts plaintiffs' definition of the class which refers to improved pensions awarded "for" unreimbursed medical expenses. Plaintiffs' definition tracks the regulatory language involved in this case [38 C.F.R. § 3.272(g) ] and follows the language used in *Sherman*. Thus, plaintiff's definition is more accurate than the language proposed by DHS. DHS may reurge its objections to the definition of the class at a later time if developments in the case so warrant a reconsideration.

## CONCLUSION

The Court concludes that a class should be certified in this case. The class shall include all persons who have been in the two years proceeding the filing of this action or may in the future be denied Title XIX benefits as a result of the Iowa Department of Human Services' counting their Veteran Administration improved pensions, awarded pursuant to 38 C.F.R. § 3.3 for unreimbursed medical expenses, as income in determining their eligibility for Title XIX benefits. The Court rejects defendant DHS's resistances to class certification based on mootness, preclusion, and the Eleventh Amendment. The Court also rejects at this time the objections entered by HHS regarding the scope of the class, as well as the objections entered by DHS regarding the definition of the class. The Court in its discretion may allow defendants to reurge the objections as to scope and definition at a later time if circumstances so warrant. Finally, the Court denies plaintiffs' and defendant DHS's cross-motions for summary judgment on the merits of this case. Although the Court has heard some arguments regarding the merits of the case, the Court directs that the parties, if they so choose, refile those motions to reflect any change in position or in their arguments now that the issue of class certification has been resolved. The Court will thereafter as needed set a hearing date and notify all parties.

**Upon the foregoing,**

**IT IS ORDERED:**

1. Plaintiffs' motion for class certification is granted, and a class shall be certified according to the above order.

2. Defendant DHS's motions for summary judgment on the issues of mootness, preclusion, and the Eleventh Amendment are denied.

3. The Court denies plaintiffs' and defendant DHS's cross-motions for summary judgment on the merits. These motions may be reurged and reinstated after the parties consider the posture of this case based on the rulings made today.

