George BROWN, Appellant,

v.

PERSONNEL ADVISORY BOARD OF
the STATE OF MISSOURI, et al.,
Respondent.

No. WD 48340.

Missouri Court of Appeals,
Western District.

April 19, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 31, 1994.

Application to Transfer Denied
Aug. 15, 1994.

William A. Shull, Warrensburg, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Craig F. Martin, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and KENNEDY and ELLIS, JJ.

BERREY, Presiding Judge.

This appeal arose from the decision of the Personnel Advisory Board (PAB) of the State of Missouri, as affirmed by the Circuit Court of Cole County, declining jurisdiction over an appeal and request for evidentiary hearing, filed by George Brown seeking review of his discharge from employment with the Missouri Department of Agriculture (MDA).

Brown was hired by MDA as an hourly, part-time grain inspector (Ag Inspector I), on April 26, 1986. Brown completed his probationary period on August 29, 1986. On July 13, 1987, he was discharged from employment by MDA for alleged violations of the Federal Grain Standards Act. Brown's dismissal letter states:

> On July 9, 1987, you were observed permitting an elevator employee to probe rail cars while you stood approximately 100 feet away from the car being sampled. In addition, you permitted one car to be probe sampled twenty minutes before loading of the car was completed.

> . . . . .

> When you were confronted about this action, you stated that you frequently let elevator employees sample cars; that you knew, as a licensed sampler, that the practice of taking official samples by other than licensed samplers was prohibited, but that you didn't see where it made any difference.

Brown contends he was discharged for contacting his state representative to determine the status of his job applications for other MDA job assignments.

On August 14, 1987, Brown made application for appeal to the Missouri Personnel Advisory Board (PAB). The PAB held an evidentiary hearing to determine if it had jurisdiction to hear the appeal. The PAB found that the "Appointing Authority [MDA] had adopted the Board's [PAB's] appeal procedures only for those employees considered by the Appointing Authority to be regular employees and that under established definitions the Appellant was not considered to be a regular employee." PAB also found that MDA "had not adopted appeal procedures to the Board for the Appellant pursuant to [§] 36.390(7), RSMo."[1] Brown filed a petition for review and mandamus in the Circuit Court of Cole County which dismissed the petition in mandamus and ruled against him on the petition for review.

In his sole point, Brown alleges the Circuit Court of Cole County erred in dismissing his appeal for lack of jurisdiction because he was a part-time employee. Brown contends that the Federal Grain Standards Act, 7 U.S.C. § 71 and regulations promulgated pursuant thereto, require that he be discharged under a merit system of employment because the contract between the United States Department of Agriculture and MDA required that MDA provide an appeal process for discharged employees. Brown also contends that MDA had assigned responsibility for hearing appeals, from employees in his job classification, to the PAB.

■ Our review in this matter is limited to reviewing the decision of the PAB which must be affirmed if it is supported by competent and substantial evidence on the whole record. *Becker v. Missouri Dept. of Corrections & Human Services*, 780 S.W.2d 72, 76 (Mo.App.1989). "The evidence must be substantial in the sense that it supports the discretionary determination of the [PAB]." *Id.* "[T]he evidence is to be considered in a light most favorable to the administrative agency, together with all reasonable inferences which support it, and if the evidence would support either of two findings, the court is

1. All statutory references are to RSMo 1986, unless otherwise indicated.

bound by the administrative determination." *Id.* at 76–77 (*citing, Morris v. Division of Probation and Parole,* 651 S.W.2d 545, 546 (Mo.App.1983)).

Grain sampling by MDA must be performed in accordance with the requirements of the United States Grain Standards Act and the regulations promulgated thereto by the Federal Grain Inspection Service. MDA was obligated to report to the Federal Grain Inspection Service any improprieties in grain sampling. MDA was also obligated to use merit principles in the employment of grain samplers.

In 1979, the legislature amended § 36.390 RSMo to permit non-merit agencies to adopt the appeal procedures of § 36.390.5 for dismissals of agency employees. By letter dated April 22, 1981, to the Commissioner of Administration, the Director of MDA, James B. Boillot, adopted the PAB dismissal procedures. On May 28, 1981, Boillot sent a letter to the PAB clarifying the classes of employees to whom the adoption of dismissal procedures would apply. The letter stated, in part:

> Pursuant to Section 36.390.7 RSMo, this is to clarify for you the official adoption by the Missouri Department of Agriculture of the appeal provisions of Section 36.390.5 RSMo for certain employees effective on May 26, 1982. These provisions shall only apply in the case of dismissals occurring on and after this date for all employees of the department *except* for employees in the following job classes *and all other employees who are still in probationary status at the time of dismissal:*

(emphasis in original).

The job classifications that were specifically excluded did not include Brown's job classification. In the same letter Director Boillot stated,

> We understand that it is our responsibility to inform dismissed *regular* employees of the appeal rights which are provided under the procedures of the Board and the time limits for exercise thereof. (emphasis added).

Section 36.380 RSMo provides that "[a]ny regular employee who is dismissed shall have the right to appeal to the board as provided under section 36.390." Section 36.390.5 RSMo states in part:

> Any *regular* employee who is dismissed ... may appeal in writing to the board within thirty days after the effective date thereof, setting forth in substance his reasons for claiming that the dismissal, suspension or demotion was for political, religious, or racial reasons, or not for the good of the service. Upon such appeal, both the appealing employee and the appointment authority whose action is reviewed shall have the right to be heard and to present evidence at a hearing ...

(emphasis added).

Section 36.020 RSMo defines regular employee as "an employee appointed to a position in accordance with this law after successfully completing a probationary period." Tommy D. Hopkins, the Division Director of the Division of Grain Inspection and Warehousing for MDA testified, "[t]he only way that [Brown] would be changed to a full-time employee would have been a filing (sic) out of a full-time application and going through the entire hiring procedure ... and that's an entirely different procedure."

In order for Brown to be entitled to a hearing before the PAB, we must find that he was a "regular" employee. There is no question that Brown completed a probationary period with MDA. We must resolve whether Brown was "appointed to a position in accordance with this law." § 36.020 RSMo.

MDA argues that it opted to utilize the dismissal procedures of Chapter 36 RSMo only for "regular" employees, but not for part-time or hourly employees. MDA refers to its employee information handbook, which distinguishes between benefits for "regular" employees and part-time or hourly employees. As to layoffs, the MDA Employee Information Manual states:

LAYOFF

The specific order in which employees of a class are to be laid off is as follows:

(1) temporary and *hourly;*

(2) original probationary employees;

(3) promotional probationary employees (by return to previous class rather than by layoff);

(4) *regular*, reemployment probationary, reinstatement probationary employees in inverse order of service credit (emphasis added).

As to leave, the manual states:

LEAVE–ANNUAL (VACATION)

... regular employee[s], ... will earn 10 hours annual leave each calendar month and may accrue annual leave until accumulating a maximum of 240 hours during your first ten years of service with the State.

.    .    .    .    .

If you are an hourly or per diem employee you will not earn annual leave.

LEAVE–SICK

... regular employees accrue 10 hours of sick leave for each calendar month of state service without limit.

.    .    .    .    .

Hourly or per diem employees do not earn sick leave.

As to the dismissal of employees, the manual states:

DISMISSAL

If you are dismissed, you will be notified in writing prior to the effective date of the dismissal and the reasons therefore will be stated. Any *regular* employee may appeal to the Personnel Advisory Board within 30 days of dismissal. (emphasis added).

As to grievance procedures, the manual states:

EMPLOYEE GRIEVANCES OR COMPLAINTS

.    .    .    .    .

Step 4—Personnel Advisory Board

The grievance may be appealed to the Personnel Advisory Board if the grievance involves dismissal of a *regular* employee. (emphasis added).

As to the pay schedule, the manual states:

PAYDAY

*Regular* employees will be paid at the end of the month and part-time employees will be paid on a supplemental payroll issued mid-month. (emphasis added).

Brown testified that he did not receive annual leave, sick leave, or paid holidays. He stated that MDA did not guarantee him that he would work "any number of hours." Brown was paid on a hourly basis. As an hourly employee, he did not work a regular schedule. Hourly employees had no expectation they would work a certain number of hours. Brown was a part-time employee. He was paid on the supplemental payroll, referred to in the employee manual.

In its employee manual, MDA distinguishes between "regular" and part-time, or hourly employees. The manual explained that there were benefits available to "regular" employees that would not be available for part-time or hourly employees. Brown was aware that he did not receive the same benefits as "regular" employees. Based upon the employee manual, Brown could not have reasonably believed he was a "regular" employee.

■ MDA did not have to adopt Chapter 36 RSMo appeal procedures. MDA could have adopted "dismissal procedures substantially similar to those provided for merit employees" in Chapter 36 RSMo. § 36.390.8 RSMo. Chapter 36 RSMo does not define part-time or hourly employees. It does not prohibit an agency from making a distinction between "regular" employees and part-time or hourly employees.

■ MDA distinguished between "regular" employees and part-time or hourly employees. MDA gave appeal rights for a dismissal only to "regular" employees. There is no dispute that Brown was a hourly employee. There was evidence to support the finding that he was also a part-time employee. As such he was not a "regular" employee. Because Brown was not a "regular" employee, we conclude that the PAB lacked jurisdiction over his appeal.

■ Brown also alleges that the Federal Grain Standard Act requires that MDA use the PAB to adjudicate his appeal from discharge. Brown refers to federal statutes and regulations that, in essence, provide that the delegated state or state agency "employ offi-

cial personnel on the basis of job qualifications rather than political affiliations." *See* 7 CFR § 800.195.F.2, 7 U.S.C. § 71 *et seq.*, 7 CFR § 800.196.G.3.2(ii). Based upon this language alone, we cannot conclude that MDA must use the PAB for *all* employee dismissals.

MDA adopted a personnel administration system based on merit principles for employees of the Division of Grain Inspection, Grain Warehousing of the Missouri Department of Agriculture. In compliance with the federal regulations and statutes, MDA adopted § 36.390.5 RSMo for appeals from dismissals. As previously stated, the appeal procedures adopted applied only to MDA "regular" employees.

Brown's point is denied.

Affirmed.

All concur.