_____

No. 96-1174

_____

Tommy D. Hopkins,                    *
                                     *
        Plaintiff/Appellee,          *
                                     *
    v.                               *
                                     *   Appeal from the United States
John L. Saunders, Kyle Vickers,      *   District Court for the
                                     *   Western District of Missouri.
        Defendants/Appellants,*
                                     *
Charles Ausfahl,                     *
                                     *
        Defendant,                   *
                                     *
Roy Temple, Beth M. Wheeler,         *
                                     *
        Defendants/Appellants.*
                          _____

                 Submitted:  June 10, 1996

                   Filed:  August 23, 1996
                          _____

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
      DOTY,* District Judge.
                          _____

WOLLMAN, Circuit Judge.

        After Tommy D. Hopkins was terminated from his job as Director of the
Division of Grain Inspection and Warehousing (the Division) of the Missouri
Department of Agriculture (the Department), he brought this 42 U.S.C. §
1983 action against John L. Saunders, Director of the Department, and
others, in their individual and official capacities, (collectively, the
officials), alleging that he had been dismissed in violation of his due
process rights and in

_____

        *The HONORABLE DAVID S. DOTY, United States District
        Judge for the District of Minnesota, sitting by
        designation.

violation of Missouri's whistleblower statute.  The officials appeal the district court's denial of their motion for summary judgment based on qualified and Eleventh Amendment immunity.  We reverse and remand.

## I.

Prior to the enactment of the 1976 United States Grain Standards Act, the Division was operating as a patronage organization.  The Grain Standards Act, and the regulations promulgated pursuant thereto, required the Division to instead "employ personnel on the basis of job qualifications rather than political affiliations."  7 U.S.C. § 79(f)(1)(A)(ix); see also 7 C.F.R. § 800.195(f)(2); 7 C.F.R. § 800.196(g)(3)(ii).  In response to the Grain Standards Act, the governor of Missouri issued an executive order in 1978 requiring the Department to establish a formal merit system for its Division employees.  Pursuant to the executive order, the Department drafted a merit system plan (the plan), which was submitted to the United States Department of Agriculture for approval.  The plan established an Agriculture Personnel Review Board (APRB) to conduct appeal hearings for Division employees.

In 1979, the Missouri legislature enacted a state merit system law, found in Chapter 36 of the Missouri Revised Statutes.  The law established a Personnel Advisory Board (PAB) to hear appeals of merit system employee dismissals.  Some merit employees were not covered by the law.  For example, Chapter 36 expressly excluded division directors from its coverage.  See Mo. Rev. Stat. § 36.030.1(1).  On May 28, 1982, the Department adopted the PAB dismissal procedures for most of its employees.  Division directors were among the employees the Department excluded from coverage.  In a letter adopting the PAB procedures, the Department agreed, however, to provide "substantially similar" appeal procedures for the excluded employees pursuant to Missouri Revised Statute section

36.390.8 if such procedures were legally required.[1]

On June 10, 1994, Hopkins was terminated from his position as division director by the Department without receiving prior notice or a hearing. He sought review of the decision by filing an appeal with the APRB, the board established pursuant to the plan. The Department responded with a letter explaining that the plan was void and that the APRB no longer existed.

Hopkins then filed an appeal with the PAB. The Department moved to dismiss the appeal, arguing that Hopkins was specifically excluded from Chapter 36 coverage and that he failed to state a claim under Missouri's whistleblower law. Hopkins urged the PAB to determine that it lacked jurisdiction over his claim because the APRB still existed and was the proper forum. He requested that the matter be remanded to the APRB. After conducting a hearing to determine whether it had jurisdiction, the PAB dismissed the case, holding that the Department had adopted the PAB's appeal procedures for its regular employees but not for its division directors. It held that the plan's appeal procedures still applied to dismissals of regular Division employees who were excepted from the PAB's appeal procedures. The Department agreed with the PAB's result but not with its rationale and sought review in Missouri state court. Hopkins successfully moved to dismiss the appeal because the Department was the prevailing party before the PAB. Hopkins then filed the present complaint in district court, seeking $6 million in compensatory damages, $3 million in punitive damages, and injunctive relief in the form of reinstatement.

---

[1]Section 36.390.8 provides that non-merit agencies "shall adopt dismissal procedures substantially similar to those provided for merit employees."

## II.

We review the trial court's denial of a motion for summary judgment de novo.  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).  Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### A.  Qualified Immunity

Under the doctrine of qualified immunity, government officials are generally immune from suit in performing discretionary duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "[Q]ualified immunity is more than a defense to suit; it grants government officials the right not to be subject to the burden of trial at all."  Billingsley v. St. Louis County, 70 F.3d 61, 63 (8th Cir. 1995) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  Whether a government official is entitled to qualified immunity is a question of law.  Engle v. Townsley, 49 F.3d 1321, 1323 (8th Cir. 1995).

To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated.  Runge v. Dove, 857 F.2d 469, 472 (8th Cir. 1988).  Instead, a plaintiff "must make a `particularized showing' that a `reasonable official would understand that what he is doing violated that right' or that `in the light of preexisting law the unlawfulness' of the action was `apparent.'"  Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The officials argue that Hopkins did not have a constitutionally protected right to continued employment.  They allege that even if the initial plan applied to Hopkins as division

-4-

director, Hopkins lost any entitlement to a right of continued employment when the Department adopted the PAB's dismissal procedures. Hopkins, on the other hand, alleges that the Department adopted the PAB procedures for its regular employees only -- thus, the appeal procedures established by the plan are still in effect as to him.

In denying the officials' claim of qualified immunity, the district court agreed with Hopkins and held that "[w]hile the specific procedures to be followed might have been debatable at the time of plaintiff's termination, the fact that he was entitled to some due process was well established[.]" The district court pointed to the Grain Standards Act and to the plan itself, which provided that employees of the Division be employed on the basis of qualifications rather than political affiliations. It held that a reasonable official should have been aware of the laws governing the dismissal of employees and accordingly refused to grant immunity.

Contrary to the district court's conclusion, we find no violation of clearly established law. Hopkins clearly had no continued right of employment under the state merit system law. Although the Department adopted the PAB's appeal procedures under Chapter 36 in 1982, both Chapter 36 and the Department itself expressly excluded division directors from coverage. Moreover, in Brown v. Personnel Advisory Bd., 879 S.W.2d 581, 584-85 (Mo. Ct. App. 1994), the Missouri Court of Appeals rejected a part-time employee's argument that the Grain Standards Act required the Department to use the PAB procedures for all employee dismissals.

Although the Department agreed to adopt similar dismissal procedures for division directors if required by law under section 36.390.8, the officials are nevertheless entitled to qualified immunity. Missouri courts have not yet decided whether section 36.390.8 confers a property interest in continued employment or

whether it merely gives employees a right to receive review procedures. Thus, in Pace v. Moriarty, 83 F.3d 261, 263 (8th Cir. 1996), we held that state officials were entitled to qualified immunity on an employee's claim for damages based on section 36.390.8. Likewise, the officials in the present case cannot be held to have violated a clearly established right when it is unclear whether section 36.390.8 bestows such a right.

Having concluded that Hopkins had no clearly established right to continued employment under the state merit system law, we turn to the question whether he had such a right under the Department of Agriculture merit plan. After a careful reading of the plan itself, we are unable to determine whether it grants Hopkins a property right. Although the plan states that it shall apply to "all offices, positions and employees" of the Division, the general language in the plan indicates that it does not apply to the division director but is to be used by the division director in dealing with his subordinates. In fact, under the plan, the division director was a member of the APRB and would thus be entitled to hear his own appeal.

Clearly, there was confusion when Hopkins was dismissed as to whether a division director had a continued right of employment, and the officials are thus entitled to qualified immunity on Hopkins' due process claim. See Tubbesing v. Arnold, 742 F.2d 401, 406-07 (8th Cir. 1984) (commissioners entitled to qualified immunity when it was not clear whether employee policy manual establishing a property right in employment applied to director). Moreover, it was unclear whether Hopkins was subject to either the plan's dismissal procedures or those provided pursuant to section 36.390.8. Our review of the record leads us to the conclusion that the only thing that is clear in this case is that the law was unsettled at the time of Hopkins' dismissal.

The officials further claim that they are entitled to qualified immunity on Hopkins' claim that he was denied a right to a post-termination hearing under Missouri's whistleblower statute. See Mo. Rev. Stat. § 105.055.[2] The Missouri courts have not yet interpreted this statute. The district court determined, however, that the right to such a hearing was clearly established by section 105.055 and thus denied the officials qualified immunity. We disagree. The relevant issue for qualified immunity purposes is whether the officials violated clearly established law when they refused to grant Hopkins a hearing on his section 105.055 claim before the APRB. Because it was not clearly established that the plan's appeal procedures applied to Hopkins as division director at the time of his dismissal, the officials were not violating any clearly established right when they denied him a hearing before the APRB. See Warner v. Graham, 845 F.2d 179, 182 (8th Cir. 1988) ("official may not be charged with knowledge that his conduct was unlawful unless it has been previously identified as such"). Accordingly, the officials are also entitled to qualified immunity on this claim.

## B. Eleventh Amendment Immunity

Because they were sued in their official capacities, the officials also seek Eleventh Amendment immunity from Hopkins' request for money damages. The Eleventh Amendment prohibits a

---

[2]Section 105.055(5) states, in relevant part:

> Any employee may file an administrative appeal whenever the employee alleges that disciplinary action was taken against the employee in violation of this section. The appeal shall be filed with the state personnel advisory board; provided that the appeal shall be filed with the appropriate agency review board or body of nonmerit agency employers which have established appeal procedures substantially similar to those provided for merit employees . . . .

citizen from suing a state for money damages in federal court. <u>Welch v. Texas Dep't of Hwys. & Public Transp.</u>, 483 U.S. 468, 472 (1987). Even when a state is not named as a party to the action, the suit may still be barred by the Eleventh Amendment. A state official is entitled to Eleventh Amendment immunity if immunity will "`protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" <u>Hadley v. North Ark. Community Technical College</u>, 76 F.3d 1437, 1438 (8th Cir. 1996), <u>petition for cert filed</u>, 65 U.S.L.W. 3001 (U.S. June 24, 1996) (No. 95-2060) (citations omitted); <u>see also</u> <u>Ford Motor Co. v. Dep't of Treasury</u>, 323 U.S. 459, 464 (1945) ("when the action is in essence one for the recovery of money from the state, the state . . . is entitled to invoke is sovereign immunity from suit even though individual officials are nominal defendants").

In considering whether the officials were entitled to Eleventh Amendment immunity, the district court noted that a critical factor was whether any judgment "would ultimately come out of state funds or whether a judgment could be paid out of non-state funds under the agency's discretionary control." The district court then refused to grant immunity, holding that Hopkins had raised a valid claim as to whether any money damages could be paid from non-state funds.

Hopkins suggested that any monetary award could be paid out of the grain inspection fee fund, which is separate from the state's general revenue fund. It is true that Missouri law requires grain inspection fees to be kept in a separate account. <u>See</u> Mo. Rev. Stat. § 411.151. However, under section 411.151.1 the account is considered part of the state treasury. In fact, section 411.151.2 authorizes the legislature to transfer money from the general revenue fund to the grain inspection fee fund as needed "to enable the director to continue operations[.]" Furthermore, no expenditures could be made from the grain inspection fee fund until

after the money was appropriated by the legislature.  § 411.151.1.

The grain inspection fee fund is also subject to several restrictions under state and federal law.  Under section 411.151.1, the money in the fund is restricted "for the payment of salaries and expenses . . . necessary for carrying out the provisions consistent with the grain inspection and weighing services of [the Grain Warehouse Law.]"  The Grain Standards Act further forbids the Division from using "any moneys collected pursuant to the charging of fees for any purpose other than the maintenance of the official inspection operation or other agricultural programs operated by the State or local governmental agency."  7 U.S.C. § 79(f)(1)(A)(vi).

In summary, section 411.151 makes clear that money in the grain inspection fee fund is part of the state treasury.  The money in the fund is restricted by both state and federal law and cannot be expended without appropriation by the state legislature.  See Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 447 (8th Cir. 1995) (university which could not spend money unless appropriated by state assembly was entitled to Eleventh Amendment immunity); Hadley, 76 F.3d at 1441 (Eleventh Amendment immunity extended to college when its daily operations were dependent upon state treasury).  Because any judgment would ultimately come out of state funds, the officials are entitled to Eleventh Amendment immunity.

## III.  Conclusion

We reverse the denial of immunity for the officials in their individual and official capacities, and remand Hopkins' claim for equitable relief for further proceedings.  See Treleven v. Univ. of Minnesota, 73 F.3d 816, 819 (8th Cir. 1996) (state official may be sued in official capacity for prospective injunctive relief); Grantham v. Trickey, 21 F.3d 289, 295 (8th Cir. 1994) (qualified immunity does not bar plaintiff's equitable claim for

reinstatement).

A true copy.

Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.