# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2803

_____

Tommy D. Hopkins,

        Plaintiff/Appellant,

   v.

John L. Saunders, Kyle Vickers,
Charles Ausfahl, Roy Temple,
Beth M. Wheeler,

        Defendants/Appellees.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

No. 98-2948

_____

Appeals from the United States
District Court for the
Western District of Missouri.

Tommy D. Hopkins,

        Plaintiff/Appellee,

   v.

John L. Saunders, Kyle Vickers,

        Defendants/Appellants,

Charles Ausfahl,

        Defendant,

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Roy Temple, Beth M. Wheeler,   *

            *

   Defendants/Appellants.  *

         _____

Submitted: September 14, 1999

Filed: December 16, 1999
_____

Before WOLLMAN, Chief Judge, HEANEY and BEAM, Circuit Judges.
_____

WOLLMAN, Chief Judge.

Tommy D. Hopkins appeals from the district court's denial of his claim for reinstatement and from the court's failure to rule on his claims that John L. Saunders and other state officials (collectively, the officials) violated his rights under the First Amendment and Title VII of the Civil Rights Act of 1964 (Title VII). 42 U.S.C. §§ 2000e-2000e-17.[1] The officials cross-appeal, contending that the district court erred in finding that Hopkins had a property interest in his job and in awarding Hopkins nominal damages and attorney fees. We affirm in part and reverse in part.

## I.

This case comes before us for the second time. We outline only those facts relevant to this appeal, referring the reader to a more complete recitation of the facts found in our first opinion, Hopkins v. Saunders, 93 F.3d 522, 524-25 (8th Cir. 1996) (Hopkins I). On June 10, 1994, Hopkins was dismissed from his position as director of the Division of Grain Inspection and Warehousing (the Division) of the Missouri Department of Agriculture (the Department) without receiving prior notice or a hearing.

_____

[1] We grant Hopkins' motion to supplement the record.

Hopkins sought review of his dismissal by filing an appeal with the Agriculture Personnel Review Board (APRB), an entity formed pursuant to a merit system plan adopted by the Department in 1978 (1978 plan). The purpose of this plan and the APRB was to ensure that Division employees were employed on the basis of job qualifications rather than political affiliations. The Department responded to Hopkins' appeal with a letter explaining that the 1978 plan was void and that the APRB no longer existed.

Hopkins then filed an appeal with the Personnel Advisory Board (PAB), an employment termination review board established under Chapter 36 of the Missouri Revised Statutes. Chapter 36 is a state merit system law that was enacted by the Missouri legislature in 1979; the Department formally adopted the PAB's dismissal procedures in 1982. Following a hearing, the PAB found that Missouri Revised Statute section 36.030.1(1) expressly excludes division directors, such as Hopkins, from the PAB's appeal procedures, and, furthermore, that the 1978 plan remained applicable to those employees who were excepted from the PAB's procedures. The PAB therefore dismissed Hopkins' claim, concluding that it lacked jurisdiction to hear his appeal and that the proper forum for such an appeal was the APRB.

Hopkins then brought a 42 U.S.C. § 1983 action in federal district court against Saunders, Director of the Department, and several other state officials, alleging that he was dismissed in violation of his due process rights and in violation of Missouri's whistleblower statute. The officials moved for summary judgment on qualified immunity and Eleventh Amendment immunity grounds. The district court denied the motion, whereupon the officials took an interlocutory appeal to this court on the question of immunity. We reversed, finding that the officials were entitled to both qualified and Eleventh Amendment immunity, and remanded the case to the district court for further proceedings regarding Hopkins' claim for equitable relief. See Hopkins I, 93 F.3d at 527. On remand, the district court found by way of cross motions for summary judgment that Hopkins had a property interest in his position as

Division director under the 1978 plan and that he had been dismissed in violation of his procedural due process rights. Following a hearing, the district court also found that Hopkins would have been dismissed from his position even if he had received due process. The court therefore awarded Hopkins nominal damages only, along with attorney fees, and entered a final judgment on all of Hopkins' claims.

## II.

Hopkins first argues that the district court denied him the opportunity to pursue claims that he was discharged in violation of the First Amendment and Title VII.[2] He contends that these claims were sufficiently raised in his second amended complaint but were never properly resolved, inasmuch as we did not dispose of them on immunity grounds in Hopkins I and the district court failed to rule on them on remand. Thus, Hopkins contends that the district court, by entering a final judgment in Hopkins' action against the officials, wrongly foreclosed his ability to pursue these claims and that we should therefore reinstate them.

Our determination whether to reinstate Hopkins' First Amendment and Title VII claims rests upon three key inquiries. First, we must determine whether Hopkins sufficiently raised First Amendment and Title VII claims in his complaint. The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party "fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." Redland Ins. Co. v. Shelter Gen. Ins. Co., 121 F.3d 443, 446 (8th Cir. 1997) (citing Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707, 714 (8th Cir. 1979)). "[I]t is the facts well pleaded, not the

---

[2]Hopkins also contends that he was improperly foreclosed from asserting a claim based upon the Missouri Constitution's counterpart to the First Amendment. For the sake of brevity and clarity, the phrase "First Amendment" as used in this opinion refers to both Hopkins' federal and state constitutional speech claims.

-4-

theory of recovery or legal conclusions," that state a cause of action and put a party on notice. Economy Housing Co. v. Continental Forest Products, Inc., 757 F.2d 200, 203 (8th Cir. 1985) (quoting Moore v. Puget Sound Plywood, Inc., 332 N.W.2d 212, 215 (1983)).

We conclude that Hopkins' second amended complaint, while not a model of clarity, alleged facts sufficient to put the officials on notice of Hopkins' First Amendment and Title VII claims. Hopkins' complaint does not assert First Amendment and Title VII claims in separately numbered counts, as it does his due process and whistleblower claims. It does, however, list the First Amendment as a basis for the district court's jurisdiction and, more importantly, generally alleges in its due process count that Hopkins was dismissed because of statements he made regarding an employee's sexual harassment complaint and the Department's hiring practices. These factual allegations suggest First Amendment and Title VII claims and thus are sufficient, albeit perhaps marginally so, to satisfy the liberal pleading requirements of the federal rules.

Second, we must determine whether Hopkins' First Amendment and Title VII claims were encompassed within our qualified immunity ruling in Hopkins I. Our jurisdiction over an interlocutory appeal challenging a district court's denial of qualified immunity "is limited to the resolution of the issue of qualified immunity." Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999). Accordingly, we have held that where a district court's summary judgment order addresses qualified immunity only as it relates to some of a plaintiff's claims and not to others, even though all such claims are part of a single action, we have jurisdiction only over those claims to which the district court expressly applied the principle of qualified immunity. See Jones v. Coonce, 7 F.3d 1359, 1365 (8th Cir. 1993).

The district court's summary judgment order considered the officials' qualified immunity only as it related to Hopkins' due process and whistleblower claims. See

Hopkins v. Saunders, No. 94-4458, slip op. at 23-27 (W.D.Mo. Jan. 9, 1996). Our jurisdiction in Hopkins I was therefore limited to these claims and did not extend to Hopkins' First Amendment and Title VII claims. As a result, Hopkins I did not dispose of Hopkins' First Amendment and Title VII claims.

Finally, we must decide whether Hopkins waived his right to pursue his First Amendment and Title VII claims. "It is an axiom of trial procedure that counsel must take the initiative in protecting the rights of his clients." McNeely v. United States, 353 F.2d 913, 917 (8th Cir. 1965). "To obtain appellate review of a trial court's acts or omissions a party must have made known to the trial court the action which the party desires the court to take . . . ." Porterco, Inc. v. Igloo Products Corp., 955 F.2d 1164, 1173 (8th Cir. 1992) (citations omitted).

We recently applied these principles in Becker v. University of Nebraska at Omaha, 191 F.3d 904 (8th Cir. 1999). There, Becker asserted in his trial brief to the district court that the defendant university had expressly consented to waive its Eleventh Amendment immunity to Becker's ADEA claim. Id. at 909 n.4. The district court, however, dismissed Becker's ADEA claim on Eleventh Amendment grounds without ever ruling on Becker's waiver argument. Id. at 907, 909 n.4. On appeal, Becker reasserted his waiver argument, but we refused to reach the merits of this issue, finding that Becker had failed to preserve it for appellate review. Id. at 909 n.4. We noted that although Becker had asserted this argument in his trial brief, this alone was insufficient to preserve it for appeal where the district court never ruled on the issue. Id. Rather, we explained that to preserve his waiver argument for appeal Becker "should have called the district court's attention to its failure to decide the waiver issue." Id. Because Becker failed to actively assert this argument to the district court, we refused to consider it on appeal.

As in Becker, Hopkins failed to adequately assert his First Amendment and Title VII claims to the district court. Although Hopkins' second amended complaint

-6-

marginally set forth these claims, the record is devoid of any evidence that Hopkins otherwise asserted them to the district court. At oral argument, Hopkins attempted to explain his failure to actively assert these claims by stating that he believed that the district court was first going to deal with his due process claim alone and then move on to his other claims. Although this may explain Hopkins' inactivity prior to the court's entry of a final judgment, it does not explain why he took no affirmative action immediately following the entry of judgment to call the district court's attention to the fact that it had not ruled on his First Amendment and Title VII claims. Hopkins challenged the district court's final judgment in two separate motions, but in neither motion did he raise his First Amendment or Title VII claims.

Therefore, although we believe that Hopkins sufficiently asserted First Amendment and Title VII claims in his complaint and that these claims were not resolved by either this court or the district court, we nevertheless conclude that Hopkins waived his right to assert these arguments on appeal. "A party may not stand idly by, watching the proceedings and allowing the district court to commit error on which the party subsequently complains." Becker, 191 F.3d at 909 n.4 (quoting McNeely, 353 F.2d at 917). Accordingly, we affirm the district court's entry of a final judgment on all of Hopkins' claims, including his First Amendment and Title VII claims.

**III.**

We turn next to issues regarding Hopkins' section 1983 procedural due process claim. The district court found that Hopkins had a property interest in his job under the 1978 plan and that his due process rights were violated when he did not receive notice or a hearing prior to his dismissal. The court also found, however, that Hopkins was dismissed for cause and therefore refused to reinstate him, instead awarding him only nominal damages. Both parties challenge aspects of this ruling. Hopkins contends that the court's failure to order reinstatement is erroneous as a matter of law, fact, and procedure. The officials, in their cross-appeal, contend that the court erred in finding

that Hopkins possessed a property interest in his job. The officials also argue that, even if the court was correct in its property interest finding, it erred in awarding Hopkins nominal damages and attorney fees.

## A.

For the sake of analytical clarity, we turn first to the officials' claims on cross-appeal. The officials first assert that the district court erred in finding that Hopkins possessed a recognized property interest in his position as Division director under the 1978 plan. We review this finding de novo, made as it was on cross-motions for summary judgment. Hossaini v. Western Mo. Med. Ctr., 140 F.3d 1140, 1142 (8th Cir.1998) (reviewing grant of summary judgment de novo).

To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law. See Marler v. Mo. State Bd. of Optometry, 102 F.3d 1453, 1456 (8th Cir. 1996). A protected property interest exists where a plaintiff has a "legitimate claim of entitlement" to a benefit that is derived from a source such as state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A plaintiff has a protected property interest in his employment if he can show "that he could have been fired only for good cause." Spitzmiller v. Hawkins, 183 F.3d 912, 916 (8th Cir. 1999).

To determine whether Hopkins had a protected property interest in his position as Division director, we must answer three questions. First, we must determine whether the 1978 plan applied to Hopkins in his capacity as Division director. Section BII of the plan, which is entitled "Coverage of the System," states that "the [merit] system established by this plan shall apply to, all offices, positions and employees of the Division of Grain Inspection, Weighing and Warehousing." This section then sets forth in detail the employees excluded from the coverage of the plan, listing six

divisions within the Department and the staff of the Department's director as among those employees excepted from the plan.

Section BII therefore lends substantial support to the district court's conclusion that the 1978 plan was intended to apply to Hopkins. Section BII's reference to "all offices, positions and employees" is sufficiently broad to encompass Hopkins' position as director of the Division. Furthermore, Section BII carefully defines those positions that are not covered by the plan, yet it fails to denote Hopkins' office as such a position. To be sure, Section BII is not entirely consistent with other language within the 1978 plan. Most notably, the plan's appeal procedures require Hopkins, in his capacity as director, to sit on the APRB to review employee terminations, which, if followed literally, would require Hopkins to review his own termination. While this result may be unorthodox (and there is no indication that recusal would not be permitted, if indeed not required, in that situation), we do not believe that it is sufficient to overcome the clear language of Section BII. Therefore, we find that the 1978 plan applied to Hopkins in his capacity as Division director.

Second, we must determine whether the 1978 plan was in effect at the time of Hopkins' dismissal. In adopting the appeal procedures of Chapter 36, the Department made clear that division directors and other specified Department employees were excluded from those procedures. There is no evidence, however, that the Department intended to abrogate existing merit systems governing those employees excluded from Chapter 36's coverage, nor does Chapter 36 itself suggest such an effect. Absent a clear intent to repeal existing merit systems, such as the 1978 plan, we cannot say that the district court erred in finding that the 1978 plan remained in effect at the time of Hopkins' discharge. Cf. United States v. Fausto, 484 U.S. 439, 453 (1988) ("[A] later statute will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two."); Nichols v. Rysavy, 809 F.2d 1317, 1331 (8th Cir. 1987).

Finally, we must determine whether Hopkins had a legitimate entitlement to continued employment under the 1978 plan.  See Roth, 408 U.S. at 577.  Rule Number VI(1)(A) of the plan states that "dismissals from employment shall be made for cause under rules uniformly applicable to all positions of employment," and that "[n]o . . . dismissal shall be made because of favoritism, prejudice or discrimination."  Rule Number VI(2)(A) reiterates this position by stating that management may not use "non-merit factors" in deciding whether to retain an employee.  The clear import of these and other provisions of the 1978 plan is that division directors such as Hopkins are not employees-at-will but may be dismissed only for cause, creating in the division directors a property interest protected by the rights guaranteed by the Due Process Clause.  See Spitzmiller, 183 F.3d at 916; Pace v. Moriarty, 83 F.3d 261, 262-63 (8th Cir. 1996).  Accordingly, the district court correctly found that Hopkins had a protected property interest in his position as Division director under the 1978 plan.

## B.

The officials' second contention on cross-appeal is that the district court erred in awarding Hopkins nominal damages and attorney fees for the officials' violation of Hopkins' procedural due process rights.  The propriety of the district court's nominal damage award, and derivatively its fee award, rests upon one issue:  Whether a nominal damage award in a section 1983 action for the violation of procedural due process rights is legal or equitable in nature.  In Hopkins I, we held that the officials were entitled to both qualified immunity and Eleventh Amendment immunity.[3]  See Hopkins I, 93 F.3d at 527.  Qualified immunity insulates a defendant from all claims for legal damages, but it does not shield a defendant from claims for equitable relief.  See Pace,

---

[3]Despite our rulings in Hopkins I, Hopkins reasserts his contention that the officials are not entitled to qualified or Eleventh Amendment immunity.  Because these arguments are precluded by the law of the case doctrine, we need not reconsider them. See Kinman v. Omaha Public School Dist., 171 F.3d 607, 610 (8th Cir 1999).

-10-

83 F.3d at 263. The Eleventh Amendment protects a state official sued in his official capacity from all claims except for certain forms of prospective equitable relief, such as reinstatement. See Campbell v. Arkansas Dep't of Correction, 155 F.3d 950, 962 (8th Cir. 1998). Recognizing that our immunity rulings had foreclosed all legal remedies, we concluded Hopkins I by instructing the district court to rule only on Hopkins' "claim for equitable relief." Hopkins I, 93 F.3d at 527. Thus, Hopkins I, by both its remand instruction and its holdings, prohibited the district court from awarding Hopkins any form of legal relief. Therefore, if the nominal damage award is found to be legal in nature, it must be vacated.

The fact that a remedy may require one party to pay money to another is not a sufficient reason to characterize the remedy as "legal relief." Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570 (1990); see also Bowen v. Massachusetts, 487 U.S. 879, 894 (1988). However, because money damages was the traditional form of relief offered in the courts of law, "federal law has consistently held that money damages are generally characterized as a legal remedy." Kampa v. White Consolidated Indus., Inc., 115 F.3d 585, 586 (1997) (citing Terry, 494 U.S. at 570). Accordingly, a monetary award will be characterized as equitable only if it possesses one of the two fundamental attributes of an equitable remedy. Terry, 494 U.S. at 570; see also Cass County Music Co. v. C.H.L.R., Inc., 88 F.3d 635, 642 (8th Cir. 1996).

First, a monetary award may be an equitable remedy if the award is "restitutionary" in nature, "such as in actions for disgorgement of improper profits." Terry, 494 U.S. at 470 (citations omitted); see also Cass County, 88 F.3d at 642. Here, the district court's nominal damage award was not in the form of restitution. By ordering the officials to pay $1.00 to Hopkins, the court was not restoring to Hopkins anything that was rightfully his, nor was it putting him in the position he would have been in had his due process rights been observed. See Black's Law Dictionary 1313 (6th ed. 1990) (defining restitution). Rather, the court's nominal damage award, like all nominal damages awarded for violations of procedural due process rights, merely

-11-

signified that "the law recognizes the importance to organized society that [procedural due process] rights be scrupulously observed." Carey v. Piphus, 435 U.S. 247, 266 (1978).

Second, a monetary award may be deemed an equitable remedy if the award is "incidental to or intertwined with injunctive relief." Terry, 494 U.S. at 571; see also Cass County, 88 F.3d at 643. Because the district court refused to grant Hopkins reinstatement or any other injunctive relief, the damage award was neither incidental to nor intertwined with any other relief.

Under the Supreme Court's framework in Terry, therefore, the district court's nominal damage award was legal in nature. This conclusion is consistent with rulings from other circuits that have expressly held that nominal damages are inherently a legal remedy, regardless of the context in which they are awarded. See, e.g., United States v. Marolf, 173 F.3d 1213, 1219-20, n.5 (9th Cir. 1999); Griffith v. Col. Div. of Youth Servs., 17 F.3d 1323, 1327 (10th Cir. 1994); Landgraf v. USI Film Products, 968 F.2d 427, 431 (5th Cir. 1992), aff'd in part, 511 U.S. 244 (1994); Swanson v. Elmhurst Chrysler Plymouth, Inc., 882 F.2d 1235, 1240 (7th Cir. 1989).

We have analyzed the nature of nominal damages in two contexts. In White v. Armontrout, we affirmed the district court's vacation of a nominal damage award on qualified immunity grounds. 29 F.3d 357, 359, 361 (8th Cir. 1994); see also Hartley v. Fine, 780 F.2d 1383, 1388 (8th Cir. 1985). In doing so, we intimated that nominal damages are legal in nature, because qualified immunity erects a barrier to legal remedies only. See Pace, 83 F.3d at 263. Several other circuits have also implicitly recognized the legal nature of nominal damages by finding them to be barred by qualified immunity. See, e.g., Ruvalcaba v. Los Angeles, 167 F.3d 514, 524 (9th Cir. 1999); Cummins v. Campbell, 44 F.3d 847, 849 (10th Cir. 1994); Fox v. Board of Trustees of State Univ. of N.Y., 42 F.3d 135, 141 (2nd Cir. 1994); Hicks v. Feeney,

850 F.2d 152, 155 n.4 (3rd Cir. 1988); Rheuark v. Shaw, 628 F.2d 297, 299 (5th Cir. 1980).

We have implied a contrary view of nominal damages in the context of a Title VII action. Prior to 1991, Title VII's remedies were statutorily limited to injunctions and "such affirmative action as may be appropriate, which may include . . . reinstatement or hiring of employees, with or without back pay, or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e-5(g)(1). Despite this limitation, we held in Dean v. Civiletti that a plaintiff who had established all the elements of a Title VII claim but was unable to show actual damages could recover nominal damages. 670 F.2d 99, 101 (8th Cir. 1982) (per curiam); see also Parton v. GTE North, Inc., 971 F.2d 150, 154 (8th Cir. 1992); Maney v. Brinkley Mun. Waterworks & Sewer Dep't, 802 F.2d 1073, 1076 (8th Cir. 1986). Dean thus implied that, at least under Title VII, nominal damages are equitable in nature.

However ambiguous our earlier holdings, we are convinced that the court's damage award in the present case constitutes legal relief. First, the court's damage award does not possess either of the attributes of equitable relief set forth by the Supreme Court in Terry. Second, the majority of circuits have characterized nominal damages as legal in nature, either expressly or implicitly through rulings in qualified immunity cases. Finally, we believe that White and its view of nominal damages is more apposite to the present case than the view intimated in Dean. White involved a section 1983 claim and the assertion of qualified immunity as a defense to that claim, see White, 29 F.3d at 360-61, whereas Dean involved a claim under Title VII and its narrow pre-1991 remedial framework, see Dean, 670 F.2d at 100. Hopkins' claim has much in common with the claim in White: it is based on section 1983 and is being challenged, at least in part, on qualified immunity grounds. In contrast, Hopkins' claim differs significantly from the claim in Dean: it does not implicate a statutory limitation on damages, such as that which existed under pre-1991 Title VII, or the concerns raised by such a limitation. Thus, we believe that White's suggestion that nominal damages are legal in nature applies in this

-13-

case; and we see no reason to expand <u>Dean's</u> implicit view of nominal damages beyond the context of Title VII.

In summary, then, we conclude that because the award of nominal damages to Hopkins constitutes legal rather than equitable relief, it runs counter to our remand instructions and our immunity holdings in <u>Hopkins I</u> and therefore must be reversed.

Likewise, we must also vacate the award of attorney fees to Hopkins. Section 1988 of Title 42 provides that the court, in its discretion, may grant "the prevailing party" reasonable attorney fees. 42 U.S.C. § 1988(b). "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." <u>Farrar v. Hobby</u>, 506 U.S. 103, 111 (1992). Absent the nominal damage award, Hopkins has obtained no relief on the merits of his claim. Hopkins received only a declaration that his procedural due process rights were violated. The "moral satisfaction" of such a declaration, without more, is not sufficient to confer prevailing party status on a plaintiff. <u>See</u> <u>Hewitt v. Helms</u>, 482 U.S. 755, 762-63 (1987).

## C.

We turn next to Hopkins' challenges to the district court's resolution of his procedural due process claim, all of which attack the court's refusal to reinstate Hopkins to his position as Division director. First, Hopkins argues that Missouri law, not federal law, establishes the appropriate remedy for the procedural due process deprivation that he suffered and that the remedy required by Missouri law is reinstatement. Thus, according to Hopkins, the district court erred by refusing to look to Missouri law in fashioning a remedy. Because the decision whether to follow state law involves a question of law, we review the district court's ruling de novo. <u>See</u> <u>McCuskey v. Central Trailer Serv., Ltd.</u>, 37 F.3d 1329, 1330-31 (8th Cir. 1994) (reviewing district court's legal conclusions de novo).

-14-

The Supreme Court defined the proper remedy for the denial of procedural due process in Carey v. Piphus, holding that the remedy for a procedural due process violation is defined by the extent of the injury that resulted from the denial of constitutionally required process. 435 U.S. at 263-64; see also Peery v. Brakke, 826 F.2d 740, 747 (8th Cir. 1987). Thus, in the context of public employment, reinstatement is proper only where a tenured employee would not have been dismissed if his procedural due process rights had been observed. See Brewer v. Chauvin, 938 F.2d 860, 864 (8th Cir. 1991). Where an employee would have been discharged even if he had received due process, i.e. was discharged for cause, his sole injury is the lack of process and only nominal damages are proper. See id.

Carey therefore makes clear that federal law defines the proper remedy for a procedural due process violation. See Brewer, 938 F.2d at 863 (quoting Peery v. Brakke, 826 F.2d 740, 747 (8th Cir. 1987)). Carey looks solely to the process to which a plaintiff is entitled, which is also defined by federal law, see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985), and determines the degree of injury that occurred because of the denial of that constitutionally mandated process. See Brewer, 938 F.2d at 863-64. State law is irrelevant to this analysis. Therefore, the district court properly looked to federal law, rather than Missouri law, in determining the proper remedy for Hopkins' procedural due process deprivation.

## D.

Hopkins also contends that, even if the district court was correct in applying the Carey remedial framework, there was insufficient evidence to support the court's finding that Hopkins was dismissed for cause. Whether an employee "would have been fired even if he had been accorded due process is a finding of fact, which we may not set aside unless clearly erroneous." Rogers v. Kelly, 866 F.2d 997, 1000 (8th Cir. 1989). We therefore must affirm the court's finding if its "account of the evidence is

-15-

plausible in light of the record viewed in its entirety." Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)).

Following an evidentiary hearing, the district court found that Hopkins was discharged because his confrontational and autonomous managerial style conflicted with the cooperative, consensus-based form of management that Saunders was attempting to create within the Department. The court thus found that Hopkins would have been dismissed even if he had received due process. This finding is supported by evidence that Hopkins repeatedly resisted Saunders' attempts to coordinate matters at the director level. For example, Hopkins refused to rely on the central personnel office, instead maintaining his own employee files, and disregarded Saunders' attempt to coordinate certain functions through the Department's Administrative Services. In addition, there was testimony that Hopkins managed his own division through intimidation and fear. This dictatorial managerial style both conflicted with Saunders' approach and harmed employee morale within the Division. Accordingly, we can not say that the district court committed clear error in finding that Hopkins would have been dismissed even if he had received due process.

**E.**

Finally, Hopkins argues that the district court's evidentiary hearing regarding the cause of his dismissal was procedurally defective in several respects. First, Hopkins contends that he was denied procedural due process at the hearing itself because he was never given a written notice prior to the hearing setting forth the officials' alleged basis for his dismissal. Although it is not clear that no such notice was provided to Hopkins prior to the hearing, we believe that even if he never received a formal notice, Hopkins was not denied due process because the fundamental purposes of due process-- "notice and an opportunity to respond"--were served. Loudermill, 470 U.S. at 546; see also Heinen v. Brewer, 171 F.3d 612, 614 (8th Cir. 1999). Hopkins had the benefit of and utilized discovery and the power of subpoena to prepare for the hearing. He was

therefore able to fully apprise himself of the officials' asserted grounds for dismissal and could adequately present a defense at the hearing.

Second, Hopkins contends that the district court incorrectly denied his Rule 60(b) motion for relief, in which he alleged that defense witnesses "systematically manipulated" their testimony by conversing in the hallway prior to testifying at the hearing. We review the district court's ruling on this issue for abuse of discretion. See United States v. Covington, 133 F.3d 639, 645 (8th Cir. 1998) (applying abuse of discretion review to the district court's refusal to grant a mistrial because of communication between witnesses). No such abuse exists here. Hopkins supports his claim of witness misconduct with five affidavits that assert that several defense witnesses conversed in the hallway outside of the courtroom. However, evidence of communication between witnesses, by itself, is insufficient to warrant relief under Rule 60(b) for improper witness communication. See id. In order to obtain Rule 60(b) relief, Hopkins must also demonstrate that the contact between witnesses "resulted in the tailoring of witness testimony . . . or the development of less than candid testimony." Covington, 133 F.3d at 645 (quoting United States v. Kindle, 925 F.2d 272, 276 (8th Cir. 1991). Hopkins has made no such showing.

Third, Hopkins asserts that the district court improperly permitted Carol Heminghaus, a defense witness, to be present in the courtroom prior to her testifying. The decision whether to exclude a witness from the courtroom is "committed to the sound discretion of the trial court." United States v. Wilson, 103 F.3d 1402, 1406 (8th Cir. 1997). Here, the court acted well within its discretion. Heminghaus was a member of the APRB that would have heard Hopkins' appeal in 1994 had a hearing been held, and her testimony at trial concerned whether she would have affirmed Hopkins' dismissal at that time. Thus, Heminghaus was "a person whose presence . . . [was] essential to the presentation of the party's cause," Fed. R. of Evid. 615, because in order to credibly testify regarding how she would have ruled in 1994, it was necessary that Heminghaus first hear the evidence that she would have heard in 1994.

Thus, not only was Heminghaus's presence in the courtroom permissible, it may have been essential.

## IV.

We reverse that portion of the district court's judgment which awards Hopkins nominal damages and attorney fees. In all other respects, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.