# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1929

_____

| | |
|---|---|
| Lewis D. Holloway, | * |
| | * |
| Appellee, | * |
| | * |
| v. | *  Appeal from the United States |
| | *  District Court for the Western |
| Sam Reeves, Sally Jones, Doylene | *  District of Arkansas. |
| Fuqua, Cynthia Coughlin, and Randy | * |
| Lawson, Individually and in their | * |
| Official Capacities as Members of the | * |
| Board of Directors of Bentonville | * |
| School District No. 6 of Benton | * |
| County, Arkansas, | * |
| | * |
| Appellants. | * |

_____

Submitted:  November 12, 2001

Filed:  January 24, 2002

_____

Before MCMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
    SMITH,[1] District Judge

_____

[1] The Honorable Ortrie D. Smith, United States District Judge for the Western
District of Missouri, sitting by designation.

MORRIS SHEPPARD ARNOLD, Circuit Judge

The defendants appeal following the district court's denial of their motion for summary judgment on the basis of qualified immunity. We reverse.

## I.

The defendants are members of the Bentonville school board who voted to fire Lewis D. Holloway from his position as school superintendent. More than two years remained on Mr. Holloway's employment contract at the time of his dismissal, and the board voted to "buy out" the remainder of the contract. In his complaint, Mr. Holloway claimed that the board deprived him of his right to due process, because he was fired without notice or hearing, in violation of 42 U.S.C. § 1983. The defendant board members maintained that they were entitled to qualified immunity.

We review a rejection of a qualified immunity defense *de novo*. *Burnham v. Ianni*, 119 F.3d 668, 673 (8th Cir. 1997) (*en banc*). "Qualified immunity shields state officials from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Doe v. Gooden*, 214 F.3d 952, 954 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The question here, then, is whether a reasonable person should have known that voting to terminate Mr. Holloway without notice or hearing, while simultaneously voting to "buy out" his contract, violated his "clearly established" constitutional right to due process.

As the Supreme Court explained in *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the "contours" of a right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" before a defense of qualified immunity is unavailable to him. In the course of that explanation, the Supreme Court referred specifically to due process rights as an example of rights that,

while "clearly established law" in the abstract, may be far from clear in their many and particularized applications.  *See id.* at 639-40.

## II.

Mr. Holloway claimed in his complaint that the defendant board members knowingly violated rights guaranteed him in the school district's policy and in state law when they fired him without notice or hearing.  But a suit under 42 U.S.C. § 1983 can remedy only a violation of federal rights, *see Gooden*, 214 F.3d at 955, and so any violations of rights guaranteed by local or state laws are irrelevant for present purposes.  We therefore concentrate only on the claim that the school board deprived Mr. Holloway of his property without due process.

Our cases clearly establish that public employees are entitled to procedural due process when they are fired from positions in which they have a legitimate expectation of continued employment, that is, when the employee's entitlement to the job is sufficiently certain so as to amount to a constitutionally protected property interest. *See Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994), *cert. denied*, 513 U.S. 964 (1994); *Runge v. Dove*, 857 F.2d 469, 472-73 (8th Cir.1988).  The evidence, particularly Mr. Holloway's employment contract, strongly supports a finding that Mr. Holloway had such an expectation of continued employment in this case.

But the school board did not simply fire Mr. Holloway and deprive him of the benefits of employment; instead, it voted to "buy out" the remainder of his contract. As of the time that Mr. Holloway was terminated, the board members expressed their intent to compensate him for the value of the remaining salary and benefits owed him according to the contract's terms, so they did not deprive him of anything of economic value when they voted to dismiss him.

While it is true that the school board later discontinued paying Mr. Holloway his salary and benefits because he obtained a superintendent's job in Georgia, the constitutionality of the board members' actions must be assessed as of the time that the actions were taken. *Cf. Gooden*, 214 F.3d at 955; *Miller v. Schoenen*, 75 F.3d 1305, 1308 (8th Cir. 1996). Mr. Holloway presents no evidence of, nor does he even allege, bad faith on the board's part with respect to the planned buy-out. He does not allege, for example, that board members publicly said that they would buy out his contract only to conceal a hidden intent to deprive him of the money due him under the contract. In fact, the school district continued paying Mr. Holloway for some time following his dismissal. Thus the board did not deprive Mr. Holloway of the economic value of his contract, and thus of his property in that sense, when it fired him.

The only remaining question is whether the board members deprived Mr. Holloway of a constitutionally protected interest in the intangible benefits of serving in the position of superintendent. Mr. Holloway cites *Winegar*, 20 F.3d at 900, for the proposition that "[a]n employee can have a protected property interest in a benefit, such as a particular assignment or duty station, if he legitimately expects to continue in that assignment." Standing alone, and lifted from its environment, that sentence might support Mr. Holloway's action, but the context of the sentence renders it inapposite.

The plaintiff in *Winegar*, 20 F.3d at 898, 901, a veteran high school teacher with an "impeccable" record, was to be relocated to a different school following an altercation with a student. *Winegar* involved constitutionally protected liberty interests as well as property interests, we said, since liberty interests arise "where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Id.* at 899. The *Winegar* court concluded that allegations of child abuse "are sufficiently stigmatizing to a teacher's reputation, honor, and good name in the community to

implicate liberty interests," *id.*, and, further, that the teacher was entitled to due process because the relocation was essentially a finding of liability, *id*. at 900-01. We specifically explained that Mr. Winegar's due process rights might not be in issue if he had been removed from his job and transferred elsewhere for "ordinary business or administrative reasons." *Id*. at 900. No liberty interests are involved in the present case, however, because Mr. Holloway's good name has not been called into doubt and no wrongdoing on his part has been alleged.

The plaintiff's liberty and property interests in "his job, his assignment, and his good name," 20 F.3d at 901, were inextricably linked in *Winegar*, a circumstance not present here. Unlike the transfer in *Winegar*, Mr. Holloway's removal from his particular assignment did not create any necessary stigma nor render him unemployable. He was not a classroom teacher but a school superintendent, and as a normal part of the political process, school superintendents are frequently fired from one place and hired at another (as Mr. Holloway's own subsequent job in Georgia illustrates). Stated differently, Mr. Holloway could expect the full economic benefit of his contract, but, to borrow from the language of *Winegar*, 20 F.3d at 900, no superintendent could "legitimately" expect to continue in that position at *any* school district beyond the pleasure of the school board, as school boards and other public bodies frequently "buy out" the contracts of top managers. Any alleged property interest in a public policy-making position itself, that is, in a "right" to serve in that particular position in addition to being paid, if it were recognized, would severely limit the right of the electorate, through its chosen representatives, to control the operation of public institutions. If a public institution specifically contracts to create such a right, of course, the situation would be different. But that did not occur here.

We note that there are cases that explicitly hold that persons in positions like Mr. Holloway's do not have a property interest in the positions themselves, and we find their reasoning persuasive. For instance, in a case very similar to the present one, the Eleventh Circuit was asked to decide whether a reasonable school board

member should have known that firing a superintendent without a hearing, but continuing to pay him the salary and benefits provided in his contract, violated the superintendent's "clearly established" due process rights. *See Harris v. Board of Educ. of Atlanta*, 105 F.3d 591 (11th Cir. 1997) (*per curiam*). The defendant in *Harris* specifically argued that he had a property interest in the intangible benefit of holding the office of superintendent. The court held that the board members could not reasonably be expected to know that they were violating the superintendent's rights, because under the law at the time the "clearly established" rights asserted by the superintendent were not rights at all. *See* id. at 596-97; *see also Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 996-97 (5th Cir. 1992) (*en banc*); *Royster v. Board of Trustees of Anderson County Sch. Dist.*, 774 F.2d 618, 621 (4th Cir. 1985).

We hold that there is no constitutionally protected property interest in a public policy-making position, aside from what are commonly called its economic benefits. Since Mr. Holloway's due process rights could not have been violated with regard to a non-existent property interest, the defendant board members are entitled to qualified immunity.

## III.

For the foregoing reasons, the decision of the district court is reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-